**SUGIYAMA CHAIN CO., LTD., I & OC of Japan Co., Ltd., and HKK Chain Corp. of America, Plaintiffs,**

v.

**UNITED STATES, Defendant.**

Court No. 92–10–00661.
Slip Op. 94–78.

United States Court of International Trade.

May 12, 1994.

Arent Fox Kintner Plotkin & Kahn, Patrick F. O'Leary and Steve Aida, Washington, DC, for plaintiffs.

Frank W. Hunger, Asst. Atty. Gen., David M. Cohen, Director, Civ. Div., Commercial Litigation Branch, U.S. Dept. of Justice, Washington, DC (Michael S. Kane, Patrick V. Gallagher, Jr., Attorney–Advisor, Office of the Chief Counsel for Import Administration, U.S. Dept. of Commerce, of counsel), for defendant.

**OPINION**

CARMAN, Judge:

Plaintiffs move for judgment upon the agency record pursuant to Rule 56.2 of this Court. Plaintiffs contest the Department of Commerce's final results in *Roller Chain, Other than Bicycle, From Japan; Final Results of Antidumping Duty Administrative Review,* 57 Fed.Reg. 43,697 (1992) (*Final Results*). The *Final Results* cover Sugiyama Chain, a manufacturer/exporter of roller chain, and various Japanese exporters of Sugiyama products to the United States. *Id.* The product at issue is described in the *Final Results* as "chain, with or without attachments, whether or not plated or coated, and whether or not manufactured to American or British standards, which is used for power transmission and/or conveyance." *Id.* The periods of review are April 1, 1981 through March 31, 1987 and April 1, 1989 through March 31, 1990. *Id.* The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1581(c) (1988).

**BACKGROUND**

Commerce's original dumping finding has been in effect since April 12, 1973. *Roller Chain, Other Than Bicycle, From Japan,* 38 Fed.Reg. 9226 (1973). Commerce initiated but did not complete reviews of roller chain imported from Sugiyama during the period 1981–1982 and 1982–1983. On October 23, 1985, counsel for the American Chain Association (ACA) requested these reviews be completed and reviews for the 1983–1984 and 1984–1985 periods be initiated. App. 5 Doc. 1.[1] Commerce undertook both these tasks on July 9, 1986. *Initiation of Antidumping*

---

1. The administrative record will be cited to by reel and frame as R.___ Fr.___. Documents which were not originally included in the administrative record but which were subsequently included by Plaintiffs' Appendices 3–6 pursuant to Court order will be cited to as App.___ Doc.___.

*Duty Administrative Reviews,* 51 Fed.Reg. 24,883 (1986) (*Initiation*).

On April 30, 1986, counsel for ACA requested Commerce initiate a review of roller chain imported from Sugiyama during the 1985–1986 period. App. 5 Doc. 2. Commerce initiated this review on May 20, 1986. *Initiation,* 51 Fed.Reg. at 18,475. Subsequent to initiation, Sugiyama's counsel prepared a memorandum for his files in which he states he orally communicated to a Commerce analyst his allegations that ACA's counsel was not authorized to request the 1985–1986 review. R. 4 Fr. 211. Plaintiffs' counsel submitted this memorandum to Commerce along with an affidavit which certified the accuracy of the information as it was personally known to counsel. R. 4 Fr. 210. In response to Commerce's request for a voluntary statement regarding its counsel's authority to request the 1985–1986 review, ACA stated "Covington & Burling represents the American Chain Association and that the requests for section 751 review filed by Covington & Burling in the above-referenced matter have been duly authorized by the American Chain Association in accordance with Association policy." App. 5 Doc. 4. Commerce accepted this statement and proceeded with the review, but was unable to successfully verify Sugiyama's submissions for the 1985–1986 review. *Final Results,* 57 Fed.Reg. at 43,697.

On April 30, 1987, the ACA requested Commerce initiate an administrative review for the 1986–1987 review period. App. 5 Doc. 6. In response, Commerce published its notice of initiation for this review on May 20, 1987. *Initiation of Antidumping and Countervailing Duty Administrative Reviews,* 52 Fed.Reg. 18,937 (1987). On September 17, 1987, however, the ACA withdrew its request for a review of Sugiyama's entries during the 1986–1987 period. App. 5 Doc. 7; *Final Results,* 57 Fed.Reg. at 43,700. ACA also withdrew its requests for the 1981–1982 and 1982–1983 reviews on October 2, 1990 [2] and the 1985–1986 review on November 14 [3] and December 6, 1990 [4] (except for Sugiya-

ma's distribution through I & OC). Rather than publish a notice of termination, Commerce decided to proceed with all of these reviews. *Final Results,* 57 Fed.Reg. at 43,-701.

In December 1990, Commerce investigated whether Sugiyama was related to one of its home market distributors, [ ] ("X" for confidentiality purposes). Commerce informed Sugiyama in January 1991 of evidence which indicated Sugiyama and X were related parties within the meaning of 19 U.S.C. § 1677(13) (1988). Commerce advised Sugiyama this relationship could impact the administrative reviews and requested an explanation for Sugiyama's apparent misrepresentation of the relationship. After receiving Sugiyama's response which indicated there was no § 1677(13) relationship, Commerce investigated further and determined on July 16, 1991 that Sugiyama and X were related parties within the meaning of § 1677(13). Commerce notified Sugiyama of this determination through a July 19, 1991 deficiency letter which also requested further information concerning home market sales to unrelated customers for all seven reviews. *Final Results,* 57 Fed.Reg. at 43,697.

After receiving Sugiyama's deficiency submission, Commerce determined the submission was defective. *Roller Chain, Other Than Bicycle, From Japan; Preliminary Results of Antidumping Duty Administrative Reviews,* 57 Fed.Reg. 3745, 3746 (1992). Because it determined Sugiyama had significantly impeded the seven administrative reviews, Commerce assigned a best information available (BIA) rate of 43.29% representing the highest calculated rate from a previous roller chain review. *Id.; see Roller Chain, Other Than Bicycle, From Japan; Final Results of Administrative Review of Antidumping Finding,* 46 Fed.Reg. 44,488, 44,-490–91 (1981). Commerce published the *Final Results* on September 22, 1992. In the *Final Results* Commerce concluded Sugiyama had substantially cooperated in all of the reviews except 1985–1986. *Final Results,* 57 Fed.Reg. at 43,703. Commerce, therefore,

2. App. 5 Doc. 8.

3. R. 1 Fr. 539.

4. App. 5 Doc. 9.

assigned BIA only to Sugiyama's unmatched sales in the other reviews at a rate of 15.92% for the 1981–1985 review periods, and 43.29% for the 1986–1987 and 1989–1990 periods. *Id.* With respect to the 1985–1986 review, Commerce assigned the 43.29% BIA rate to all sales. *Id.*

### CONTENTIONS OF THE PARTIES

Plaintiffs contend Commerce should not have conducted a 1985–1986 review because the ACA's request for that review was invalid. Regardless of whether the Court holds the request was invalid, plaintiffs claim Commerce should have terminated the 1985–1986 review, as well as the 1981–1983 and 1986–1987 reviews, when the ACA withdrew its review requests. Plaintiffs also maintain Commerce improperly concluded it could not verify Sugiyama's 1985–1986 questionnaire response and used an improper methodology in the attempted verification. Additionally, plaintiffs claim Commerce's determination that Sugiyama had unmatched U.S. sales in the 1981–1985, 1986–1987 and 1989–1990 reviews was not based on substantial evidence on the record. Plaintiffs further contend Commerce's choice of BIA for the 1985–1987 and 1989–1990 reviews was not in accordance with law. Finally, plaintiffs complain Commerce failed to provide Sugiyama with adequate information in order for it to reproduce Commerce's calculations to determine whether Commerce committed any ministerial errors.

Commerce maintains there is no evidence on the record supporting plaintiffs' claim that ACA's 1985–1986 review request was invalid, and regardless, Commerce was statutorily required to conduct the review. Commerce asserts it was also statutorily required to conduct the 1981–1983, 1985–1986 and 1986–1987 reviews whether or not it recognized ACA's withdrawals of its requests for review. Commerce argues it properly determined Sugiyama failed verification in the 1985–1986 review. Commerce contends because Sugiyama misrepresented its relationship with its primary home market distributor, it properly determined Sugiyama had unmatched U.S. sales in the 1981–1985, 1986–1987 and 1989–1990 reviews. Commerce maintains it properly selected a BIA rate for Sugiyama's

1985–1987 reviews because Sugiyama provided Commerce with inaccurate, incomplete and untruthful information. Commerce responds to plaintiffs' final argument by denying any legal obligation to provide Sugiyama with a complete set of computer printouts showing all of Commerce's calculations.

Commerce agrees with plaintiffs on three issues and requests a remand to do the following: (1) reexamine its selection of BIA for the 1981–1985 reviews; (2) correct the computer programming errors in its constructed value calculations for the 1981–1983 reviews; and (3) determine whether certain alleged data input errors by Sugiyama in the 1989–1990 review warrant correction.

### STANDARD OF REVIEW

In an action challenging Commerce's final results, this Court must decide whether Commerce's determination is supported by substantial evidence on the record and is otherwise in accordance with law. 19 U.S.C. § 1516a(b)(1)(B) (1988). "Substantial evidence is something more than a 'mere scintilla,' and must be enough reasonably to support a conclusion." *Ceramica Regiomontana S.A. v. United States,* 10 CIT 399, 405, 636 F.Supp. 961, 966 (1986), *aff'd,* 5 Fed.Cir. (T) 77, 810 F.2d 1137 (1987) (citations omitted).

■ The Court must accord substantial weight to the agency's interpretation of the statute it administers. *American Lamb Co. v. United States,* 4 Fed.Cir. (T) 47, 54, 785 F.2d 994, 1001 (1986) (citations omitted). "An agency's 'interpretation of the statute need not be the *only* reasonable interpretation or the one which the court views as the most reasonable.'" *ICC Indus., Inc. v. United States,* 5 Fed.Cir. (T) 78, 85, 812 F.2d 694, 699 (1987) (emphasis in original) (citation omitted).

### DISCUSSION

A. *Validity of ACA's 1985–1986 Review Request*

■ Plaintiffs argue petitioner ACA's request for a 1985–1986 review was invalid because ACA's board of directors never authorized its attorney to request a review. According to plaintiffs, therefore, the Court

should remand this case to Commerce with directions to rescind the initiation notice.

Commerce contends because there is no evidence on the record supporting plaintiffs' argument that ACA's attorney was unauthorized to request a review, the agency is not required to investigate plaintiffs' allegations. Regardless of ACA's request, Commerce maintains 19 U.S.C. § 1675 (1986) required it to conduct a review whether or not a request is submitted.

In August 1986, Commerce received a letter submitted by counsel for another respondent, Tsubakimoto, alleging ACA's request had not been properly made. Tsubakimoto provided no details or supporting evidence pertaining to its allegation. Nonetheless, Commerce asked the ACA to submit voluntarily a statement concerning its attorney's authorization. The ACA responded by informing Commerce that the attorney in question represented the ACA and his request for a review had been duly authorized. Counsel for plaintiffs did not submit to Commerce his June 1986 memorandum containing similar allegations until March 1992. Although this memorandum states counsel orally informed Commerce of the allegedly unauthorized review request in May 1986, there is nothing else on the record that indicates counsel notified Commerce.

■ Even assuming counsel did notify Commerce, Commerce's decision to accept the ACA's statement that its attorney was authorized to act was lawful. If it is possible to draw two inconsistent conclusions from the same evidence, this fact does not mean that an agency's findings are not supported by substantial evidence. *Consolo v. Federal Maritime Comm'n*, 383 U.S. 607, 620, 86 S.Ct. 1018, 1026, 16 L.Ed.2d 131 (1966). Commerce, as fact-finder, was presented with allegations of an unauthorized request for review. In response to these allegations, Commerce solicited information from the ACA. The ACA replied in no uncertain terms that the review request had been authorized. The Court holds Commerce properly considered the request for review by ACA's counsel to be authorized.

**B.** *ACA's Withdrawal of 1981–1983, 1985–1986, 1986–1987 Review Requests*

Because plaintiffs claim Commerce's role is one of independent investigator, they argue the agency should not assume the role of partisan. Plaintiffs contend Commerce assumed such a role by failing to recognize ACA's withdrawal letter automatically terminated Commerce's review. Plaintiffs assert Commerce's refusal to terminate the review is inconsistent with its past decisions.

Moreover, plaintiffs argue Commerce's claimed basis for refusing to terminate, that Sugiyama misrepresented its relationship with X, is without merit. According to plaintiffs, Sugiyama had not yet answered the questionnaires for the 1981–1983 and 1986–1987 reviews at the time the memoranda relating to this relationship and on which Commerce relied were written. Furthermore, because each review is independent of other reviews, plaintiffs argue the fact Commerce found dumping margins in the 1987–1989 reviews should not affect the agency's decision to terminate reviews for other periods. Plaintiffs also point out that the margins found in the 1987–1989 reviews, the highest of which was 1.36%, are misleadingly labelled "significant" by Commerce in its brief.

Commerce maintains it is required by law to complete administrative reviews of all merchandise entered prior to October 22, 1986. According to Commerce, the 1984 amendment to § 1675 which added language directing Commerce to conduct a review "if a request for such a review has been received," does not apply to merchandise entered prior to October 22, 1986. Even if it were not under such a legal compulsion, Commerce asserts it should not recognize the withdrawal of a request for review because other interested domestic parties may have relied on the request that is ultimately withdrawn. Moreover, Commerce claims it was within its discretion in completing the reviews because of (1) Sugiyama's misrepresentation of its relationship with X; (2) the difficulties it experienced in the 1985–1986 review verification; and (3) the calculation of significant margins for Sugiyama in the 1987–1988 and

1988–1989 reviews. *See Final Results,* 57 Fed.Reg. at 43,701.

### 1. *1981–1983 and 1985–1986 Reviews*

■ Prior to the enactment of the Trade and Tariff Act of 1984, Commerce was required to conduct annual administrative reviews of merchandise subject to antidumping findings and orders. Trade Agreements Act of 1979, Pub.L. No. 96–39, § 751, 93 Stat. 144, 175 (1979). This requirement of mandatory annual administrative reviews was eliminated for investigations commenced after October 30, 1984. Trade and Tariff Act of 1984, Pub.L. No. 98–573, § 611(a)(2)(A), 98 Stat. 2948 (1984) (codified as amended at 19 U.S.C. § 1675(a)(1) (1988)). On October 22, 1986, Congress further amended section 1675(a)(1) to eliminate the requirement for § 751 reviews in those investigations begun before October 30, 1984. Tax Reform Act of 1986, § 1886(b), Pub.L. No. 99–514, § 1886(b), 100 Stat. 2085, 2922–23 (1986); *see Krupp Stahl A.G. v. United States,* 15 CIT 169, 171–173, 1991 WL 62139 (1991); *Interredec, Inc. v. United States,* 11 CIT 45, 48–51, 652 F.Supp. 1550, 1554–56 (1987). As amended, section 1675(a)(1) provides as follows:

> [a]t least once during each 12–month period beginning on the anniversary of the date of publication of a countervailing duty order under this subtitle or under section 1303 of this title, an antidumping duty order under this subtitle or a finding under the Antidumping Act, 1921, or a notice of the suspension of an investigation, the administering authority, *if a request for such review has been received* and after publication of notice of such review in the Federal Register, shall—
>
> . . . .
>
> **(B)** review, and determine (in accordance with paragraph (2)), the amount of any antidumping duty. . . .

19 U.S.C. § 1675(a)(1) (emphasis added).

On October 23, 1985, Sugiyama requested administrative reviews of five Sugiyama distribution channels for the 1981–1982 and 1982–1983 periods. On July 9, 1986, Commerce published its notice of initiation for three of the five distribution channels it decided to review: Sugiyama/Hokoku, Sugiya-ma/I & OC, and Sugiyama/Harima Enterprises. On April 30, 1986, the ACA requested an administrative review of several Sugiyama distribution channels. Commerce published its initiation notice for the 1985–1986 review on May 20, 1986 for five of Sugiyama's distribution channels. Because each of these three reviews stems from an investigation commenced before October 30, 1984 and reviews initiated prior to October 22, 1986, Commerce was required to complete the annual reviews. 19 U.S.C. § 1675 (1982). The fact the ACA withdrew its requests for reviews of these particular periods is irrelevant as 19 U.S.C. § 1675(a)(1) directed Commerce to conduct § 751 reviews of this merchandise. Accordingly, the Court holds Commerce lawfully conducted § 751 reviews for the 1981–1982, 1982–1983, and 1985–1986 periods.

### 2. *1986–1987 Review*

Unlike the other disputed review periods, the 1986–1987 review period falls under the 1986 amendment to 19 U.S.C. § 1675(a)(1). According to this amendment, Commerce must receive a request before conducting a § 751 review after October 22, 1986 for an investigation commenced before October 30, 1984. *See* Tax Reform Act of 1986, Pub.L. No. 99–514, 100 Stat. 2085; *Interredec,* 11 CIT at 48–51, 652 F.Supp. at 1554–56. This amendment served to effectuate further the congressional intent stated in the Conference Report for the Trade and Tariff Act of 1984:

> [The amendment to § 1675(a) ] is designed to limit the number of reviews in cases in which there is little or no interest, thus limiting the burden on petitioners and respondents, as well as the administering authority. The committee intends the administering authority should provide by regulation for the assessment of antidumping and countervailing duties on entries for which review is not requested. . . . Further, the administering authority should be able to revoke antidumping or countervailing duties that are no longer of interest to domestic interested parties.

H.R.CONF.REP. No. 1156, 98th Cong., 2d Sess. 181 (1984), *reprinted in* 1984 U.S.C.C.A.N. 4910, 5298. With respect to the above-quot-

ed passage, the Court of Appeals for the Federal Circuit commented that "[a]t least this much is clear: Administrative reviews of [less than fair value] sales are expensive and burdensome. If industry interest is lacking, Congress intended to eliminate that investigative burden." *Oregon Steel Mills Inc. v. United States,* 7 Fed.Cir. (T) 22, 28, 862 F.2d 1541, 1546 (1988).

■ Although Congress did not address the issue, Commerce interprets 19 U.S.C. § 1675(a)(1) as providing it with the discretion to accept or reject a party's withdrawal of a request for a § 751 review. "It is well settled that an agency's interpretation of the statute it has been entrusted by Congress to administer is to be upheld unless it is unreasonable." *U.H.F.C. Co. v. United States,* 9 Fed.Cir. (T) 1, 10, 916 F.2d 689, 698 (1990) (citations omitted). Congress did not address in 19 U.S.C. § 1675(a)(1) the question of a party's withdrawal of its request for review. Because as a practical matter there is a potential for abuse in an unregulated withdrawal procedure, Commerce has reasonably interpreted the statute as allowing it discretion to deal with this issue.[5]

■ The Court, however, holds Commerce abused its discretion in refusing to accept the ACA's withdrawal and failing to terminate the § 751 review of Sugiyama for the period 1986–1987. The ACA made its request for the 1986–1987 review on April 30, 1987 and withdrew its request on September 17, 1987. In the interim, Commerce published its initiation notice on May 20, 1987. Although the ACA withdrew its 1986–1987 review request after Commerce had published its initiation notice, Commerce had not yet conducted any work on this review. In fact, Commerce did not commence its review until four years after it had published the initiation notice.

■ Commerce states as one of its primary reasons for continuing the 1986–1987 review of Sugiyama its discovery of a relationship between Sugiyama and X which Sugiyama failed to report in questionnaire re-

sponses in prior reviews. Commerce did not make this discovery, however, until December 1990—over three years after the ACA withdrew its request for a 1986–1987 review. The Court finds this is an unreasonable period of time for Commerce to wait. Commerce asserted two additional bases for continuing the review: the dumping margins found in the 1987–1989 reviews and the "extensive difficulties" encountered in the 1985–1986 verification. The Court, however, holds it was improper for Commerce to base its decision not to terminate on factors unrelated to the 1986–1987 review. *See Outokumpu Copper Rolled Prods. AB v. United States,* 17 CIT ——, ——, 829 F.Supp. 1371, 1377 (1993), *appeal after remand, dismissed,* 18 CIT ——, Slip Op. 94–45 (April 1, 1994) ("It is well established that antidumping investigations and administrative reviews are wholly independent proceedings.").

The Court finds no apparent difference between the ACA's request withdrawal in this review and its October 2, 1990 request withdrawal with respect to Honda. In the Honda case, the ACA requested an administrative review of Honda for the period 1981–1985 on October 23, 1986 and Commerce published its notice of initiation on July 9, 1986. *Roller Chain, Other Than Bicycle, From Japan; Intent to Revoke in Part Antidumping Duty Finding,* 56 Fed.Reg. 5796 (1991). Approximately five years after requesting the review and over four years after Commerce published its initiation notice, the ACA withdrew its request for review. *Id.* Commerce accepted the ACA's withdrawal and terminated the review explaining that

> [g]iven the fact that petitioner withdrew its own request, that no significant work has yet been undertaken on these reviews, and that these reviews were initiated prior to the 90–day requirement, we deem it reasonable to extend the time limit in this case and allow withdrawal.

*Id. See also Roller Chain From Japan; Partial Termination of Antidumping Duty*

---

5. Commerce eventually promulgated 19 C.F.R. § 353.22(a), (c) (1989). This regulation provides in part that Commerce may permit a party to withdraw its request for review within 90 days after initiation or after a longer period of time if Commerce so allows. The ACA's September 17, 1987 withdrawal letter pre-dated the June 25, 1989 effective date of 19 C.F.R. § 353.22(a)(5). Section 353.22(a)(5)'s 90–day requirement is therefore inapplicable.

*Administrative Reviews,* 56 Fed.Reg. 2749 (1991) (After the ACA and respondent Oriental Chain Manufacturing withdrew their requests for review, Commerce terminated the review approximately four and one-half years after publishing its initiation notice.). Because Commerce has failed to provide a reasonable basis for refusing to terminate Sugiyama's 1986–1987 § 751 review, the Court holds Commerce has abused its discretion and the *Final Results* with respect to this review are vacated.

### C. *Verification of Sugiyama's 1985–1986 Questionnaire Response*

■ Plaintiffs argue Commerce improperly concluded it could not verify Sugiyama's 1985–1986 questionnaire response and used an improper methodology in the attempted verification. According to plaintiffs, not only did Sugiyama provide Commerce with all the required financial statements but Commerce's verification report shows that the transactions Commerce claims are "off the books" are in fact included in Sugiyama's official records in the company's accounts receivable ledger. Commerce further erred, plaintiffs claim, in concluding Sugiyama maintains two sets of books and increased its expenses included in the "ESP-offset adjustment." Plaintiffs contend there are additional errors and inconsistencies throughout the verification report which put the credibility of the report in question. Plaintiffs assert Commerce is penalizing Sugiyama for not maintaining its records in the form desired and for not producing nonexistent documents.

Commerce argues Sugiyama failed verification for the review period 1985–1986 because it "could not substantiate the total volume and value of sales of covered products to the United States." *Final Results,* 57 Fed.Reg. at 43,700. Commerce also maintains additional deficiencies in Sugiyama's response, such as its failure to provide official financial statements, discrepancies in the firm's wage reports, and its inability to document proof of payment for certain U.S. sales, contributed to the failed verification. *Id.*

Plaintiffs do not point to any evidence on the record demonstrating Commerce's conclusion that Sugiyama "could not substantiate the total volume and value of sales of covered products to the United States" was unlawful or not based on substantial evidence on the record. Sugiyama attempts to persuade the Court the entire verification report is unreliable by discussing such points as (1) the verifier's health and daily commute, (2) whether audited financial statements were provided, (3) whether there were "two sets of books," (4) whether there were "off-the-books transactions," and (5) whether Sugiyama inexplicably increased the ESP–Offset adjustment. However, even if there were problems with each of these matters, it would not eliminate the principal basis upon which Commerce made its determination: Sugiyama failed to substantiate the total volume and value of sales of covered products to the U.S. The Court, therefore, holds Commerce properly determined Sugiyama failed the 1985–1986 verification.

■ With respect to requests by Commerce for certain sales information, Sugiyama complains it was penalized for not maintaining its records in Commerce's desired format. The Court finds no merit in this complaint. It is incumbent upon a respondent to provide Commerce with the necessary information and in the format requested so that the agency may properly conduct its review. *See* 19 U.S.C. § 1677e(c) (1988) (Commerce "shall" use BIA "whenever a party or any other person refuses or is unable to produce information requested in a timely manner and *in the form required.*") (emphasis added); *Yamaji Fishing Net Co. v. United States,* 17 CIT ——, 830 F.Supp. 1502 (1993) (BIA appropriate where respondent was unable to provide Commerce with requested information on computer tape). Consequently, the Court finds Commerce properly required Sugiyama to submit sales information in a format that would facilitate its administrative review.

### D. *Unmatched U.S. Sales in 1981–1985 and 1989–1990 Reviews* [6]

Plaintiffs contend because Sugiyama and X are not related parties pursuant to 19 U.S.C.

---

**6.** As discussed above, the Court vacated the *Final*   *Results* with respect to the 1986–1987 review

§ 1677(13), Commerce's claim of unmatched U.S. sales fails and Commerce should have used Sugiyama's original questionnaire responses. According to plaintiffs, Commerce's conclusion that Sugiyama and X are related is inconsistent with past decisions where Commerce further examined the relationship in question to determine whether superficial facts actually amounted to control.

Even if Sugiyama and X were related parties, plaintiffs argue, Commerce should have used the 1981–1985 and 1989–1990 related party prices pursuant to 19 U.S.C. § 1677b(a)(3) (1988) to determine foreign market value (FMV). Despite Commerce's argument otherwise, plaintiffs maintain Commerce never conducted a comparability test to determine whether use of the alleged related party prices would be appropriate. Moreover, because almost eleven years went by between the first U.S. sales being investigated and the preliminary results, plaintiffs claim Commerce should have tried to resolve the unmatched U.S. sales problem by seeking alternative data for computing FMV. Plaintiffs suggest the following as such possible alternatives: plaintiffs' August 21, 1991 submissions; sales by Hokoku; third country FMV; or constructed value.

Commerce claims its determination that Sugiyama is related to X within the meaning of 19 U.S.C. § 1677(13)(C) is supported by the presence of two common directors and the fact Sugiyama provided 60% of X's start-up capital. *Final Results,* 57 Fed.Reg. at 43,701. With respect to the delays involved in this investigation, Commerce contends they resulted from Sugiyama's misrepresentation of its relationship with X. Furthermore, Commerce is unwilling to consider Sugiyama's suggested FMV computation alternatives because it maintains it does not have to acquiesce to a respondent's suggestions when the respondent has refused to provide the requested information.

■ The first question the Court must answer with respect to this issue is whether Commerce's conclusion that Sugiyama and X are related parties is based on substantial evidence on the record and is accordance with law. In determining whether a party is related, Commerce looks to the following statutory language:

> For the purpose of determining United States price, the term "exporter" includes the person by whom or for whose account the merchandise is imported into the United States if—
>
> .    .    .    .    .
>
> (C) the exporter, manufacturer, or producer owns or controls, directly or indirectly, through stock ownership or control or otherwise, any interest in any business conducted by such person;....

19 U.S.C. § 1677(13)(C). Plaintiffs claim § 1677(13) can only be satisfied based on a "financial relationship test." The Court disagrees and holds Commerce may properly consider "both financial and/or non-financial connections" when assessing whether parties are related within the meaning of 19 U.S.C. § 1677(13)(C). *E.I. DuPont De Nemours & Co. v. United States,* 17 CIT ——, ——, 841 F.Supp. 1237, 1248 (1993).

■ Plaintiffs do not dispute Sugiyama provided X with 60% of its start-up capital and two board directors. Despite insisting the start-up capital is merely a loan, [    ] Based on this substantial record evidence, Commerce has properly determined Sugiyama and X are related parties within the meaning of § 1677(13)(C).

■ The Court will now address the second question pertaining to the related party issue, whether Commerce should have used Sugiyama's related party prices pursuant to 19 U.S.C. § 1677b(a)(3). This statute provides as follows:

**(3) Indirect sales and offers for sale**

If such or similar merchandise is sold or, in the absence of sales, offered for sale through a sales agency or other organization related to the seller in any of the respects described in section 1677(13) of this title, the prices at which such or similar merchandise is sold or, in the absence

---

because Commerce abused its discretion in failing to terminate the review. It is therefore unnecessary to address plaintiffs' contentions re-

garding unmatched sales in the 1986–1987 review.

of sales, offered for sale by such sales agency or other organization may be used in determining the foreign market value. 19 U.S.C. § 1677b(a)(3). Sugiyama contends this language requires Commerce to conduct a comparability test to determine whether the related party prices could be used before it resorts to BIA. While the Court agrees § 1677b(a)(3) allows Commerce to use related party prices which pass a comparability test, there must be sufficient information submitted by a respondent for Commerce to conduct such a test. In the instant case, however, there was not sufficient information.

Commerce was unable to use submissions of home market sales by Sugiyama to calculate FMV. Jan. 9, 1992 ITA Memo from Robert J. Marenick to Joseph A. Spetrini. Despite receiving at least three letters and an extension of time from Commerce, Sugiyama submitted a deficient tape of home market sales to unrelated customers. *Id.* Commerce found deficiencies in Sugiyama's submission in the following areas: unit prices, quantities, dates of sale, invoice numbers, and supporting documentation. *Id.* Because it did not have usable data, Commerce was unable to conduct a comparability test and resorted to BIA. *See id.;* Jan. 15, 1992 ITA Memo from Robert J. Marenick to Joseph A. Spetrini. Sugiyama was given the opportunity to provide unrelated customer sales data and failed. Plaintiffs, thus, have no basis to complain Commerce refused to base FMV on one of plaintiffs' suggested alternatives. The Court holds, therefore, Commerce lawfully resorted to BIA and rejects plaintiffs' arguments with respect to the use of related party prices.

### E. *Commerce's Choice of BIA for 1985–1986 and 1989–1990 Reviews* [7]

According to plaintiffs, Commerce used first tier BIA for the 1985–1986 review because Sugiyama failed verification. This decision, plaintiffs claim, is inconsistent with Commerce's past decisions not to use first tier BIA for firms which simply failed verifi-

cation. Plaintiffs maintain there are no extenuating circumstances in this case to justify first tier BIA. Additionally, plaintiffs argue because the 43.29% rate was not a final, calculated rate, it cannot be used. Moreover, plaintiffs contend Commerce cannot use this rate against plaintiffs because this Court has already held the rate to be unlawful, *citing Pulton Chain Co. v. United States,* 17 CIT ——, ——, Slip Op. 93–202 at 17, 1993 WL 428632 (Oct. 18, 1993).

■ Commerce argues it lawfully used BIA for the 1985–1986 review because it was unable to verify Sugiyama's submissions for that period. *See Final Results,* 57 Fed.Reg. at 43,701. Commerce also maintains it properly resorted to BIA for the 1989–1990 review because Sugiyama failed to (1) demonstrate its home market sales to two related customers were at arm's length; (2) indicate which models sold to unrelated home market customers were most similar to Sugiyama's unmatched sales; and (3) provide differences in the physical characteristics of the merchandise information for its unmatched sales. *See id.* Commerce claims it properly applied first tier BIA to Sugiyama because Sugiyama provided Commerce with inaccurate, incomplete and untruthful information. *See* 19 U.S.C. § 1677e(c) (1988). Additionally, Commerce asserts the 43.29% rate was in fact a final, calculated rate and was not an incomplete or interim rate.

Once Commerce determines the use of BIA is necessary pursuant to § 1677e(c), it applies its two-tier BIA method. Under its two-tier BIA method Commerce divides respondents into two categories: those that refused to cooperate or significantly impede the investigation and those that substantially cooperated. For those respondents failing to cooperate, Commerce will select the higher of the highest rate assigned for any firm in the LTFV investigation or prior administrative reviews; or the highest rate calculated in the same administrative review. *Final Results,* 57 Fed.Reg. at 43,702; *see Allied–Signal Aerospace Co. v. United States,* 11 Fed.Cir. (T) ——, 996 F.2d 1185 (1993).

---

**7.** The Court need not address plaintiffs' arguments concerning Commerce's choice of BIA for

the 1986–1987 review. *See supra* note 5.

For the 1985–1986 period, Commerce applied the highest calculated rate from a previous roller chain review and assigned Sugiyama the 43.29% rate calculated in that review. *See Roller Chain, Other Than Bicycle, From Japan; Final Results of Administrative Review of Antidumping Finding,* 46 Fed.Reg. 44,488 (1981). Commerce decided to use the first-tier BIA rate because it found Sugiyama significantly impeded the investigation. Commerce's decision was based on several factors.

> First is the failed 1985–86 verification, combined with the severity of the discrepancies and deficiencies, which calls into question the validity of all reported information and documents presented in connection with that review. Second is Sugiyama's failure, despite the Department's good will, to supply a usable computer tape, to report complete information on [home market] sales, and its failure to provide the supporting documentation, which significantly impeded the completion of these administrative reviews. The final factor is Sugiyama's failure to report its relationship with [X].

Jan. 15, 1992 ITA Memo from Robert J. Marenick to Joseph A. Spetrini at 4–5. Although it would have been more useful if Commerce had provided this complete reasoning in the *Final Results,* the Court nevertheless holds Commerce's determination to use first-tier BIA was based on substantial evidence on the record and was in accordance with law.

■ The Court next addresses Sugiyama's argument that the Court in *Pulton Chain* held the rate unlawful and that the 43.29% rate is not a final calculated rate. Contrary to plaintiffs' assertions, *Pulton Chain* did not hold the 1979–1980 43.29% rate unlawful. *See Pulton Chain,* 17 CIT at ——, Slip Op. 93–202 at 17, 1993 WL 428632. Instead, based on the particular facts of the case, the Court held Commerce's application of the 43.29% rate to plaintiff Pulton Chain was arbitrary and capricious. *Id.*

The Court finds plaintiffs' second point with respect to this argument similarly without merit. Although Congress mandated Commerce to use BIA in those situations where a respondent is unwilling or unable to participate in the administrative review, it did not define what constitutes BIA. "[B]ecause Congress has explicitly left a gap for the agency to fill in determining what constitutes the best information available, the ITA's construction of the statute must be accorded considerable deference." *Allied–Signal,* 11 Fed.Cir. at ——, 996 F.2d at 1191 (citation and quotations omitted). Regardless of whether plaintiffs correctly state the rate at issue has not been finalized, there is no such statutory or regulatory requirement. Based on the deference this Court must accord to Commerce in its choice of BIA and the need to avoid "rewarding the uncooperative and recalcitrant party for its failure to supply requested information,"[8] the Court holds Commerce properly chose 43.29% as BIA for Sugiyama. *See also Asociacion Colombiana de Exportadores v. United States,* 13 CIT 13, 28, 704 F.Supp. 1114, 1126 (1989) *aff'd,* 8 Fed.Cir. (T) 97, 901 F.2d 1089 (1990) (BIA "is not necessarily accurate information, it is information which becomes usable because a respondent has failed to provide accurate information.") (citation omitted).

### F. *Computer Printouts of Commerce's Calculations*

■ Citing 19 C.F.R. § 353.28 (1988) in support of their argument, plaintiffs claim they were denied due process by being denied copies of all Commerce's calculations. In the alternative, plaintiffs contend Commerce abused its discretion by failing to produce the complete set of computer printouts. In opposition, Commerce maintains it is not required by 19 C.F.R. § 353.28 to provide respondents with complete computer printouts of all its calculations. Additionally, Commerce argues because it provided plaintiffs with a complete set of formulas, computer programs, analysis memoranda and sample calculations, and plaintiffs already possessed their own data, plaintiffs had everything they needed to replicate Commerce's calculations.

---

8. *Allied–Signal,* 11 Fed.Cir. at ——, 996 F.2d at 1192.

Plaintiffs correctly state they are entitled to due process protection in antidumping administrative reviews. *See* U.S. CONST. amend. V; *NAR, S.p.A. v. United States,* 13 CIT 82, 90, 707 F.Supp. 553, 561 (1989) ("That NAR has a legitimate right of due process is not at issue."). The Court, however, holds Commerce neither denied plaintiffs due process nor abused its discretion. Where an issue involves Commerce's construction of a regulation as opposed to a statute, Commerce is entitled to a greater degree of deference. *Asociacion Colombiana de Exportadores de Flores v. United States,* 8 Fed.Cir. (T) 126, 131, 903 F.2d 1555, 1559–60 (1990) (quoting *Udall v. Tallman,* 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965)). Commerce's interpretation of the applicable regulation, 19 C.F.R. § 353.28, "becomes ... controlling ... unless it is plainly erroneous or inconsistent with the regulation." *Id.* (quoting *Udall,* 380 U.S. at 16, 85 S.Ct. at 801 (citation omitted)).

19 C.F.R. § 353.28 states Commerce "will disclose the calculations performed in connection with a final antidumping duty determination...." In this case, Commerce provided plaintiffs not only with a complete set of formulas but computer programs, analysis memoranda and sample calculations as well. Because the information Commerce applied these formulas to was submitted to Commerce by Sugiyama, Sugiyama cannot complain Commerce has denied it access to record evidence. While it may be burdensome for Sugiyama to replicate the calculations, it would be similarly burdensome to impose a requirement on Commerce to provide respondents with complete computer printouts of all Commerce's calculations. Commerce's interpretation of 19 C.F.R. § 353.28 is controlling as it is neither plainly erroneous nor inconsistent with the regulation. *See Asociacion Colombiana,* 8 Fed.Cir. (T) at 131, 903 F.2d at 1559–60. Accordingly, the Court holds Commerce was not required to provide Sugiyama with complete computer printouts of all Commerce's calculations.

### CONCLUSION

The Court holds Commerce properly (1) considered the request for a 1985–1986 review by ACA's counsel to be authorized; (2) conducted § 751 reviews for the 1981–1982, 1982–1983, and 1985–1986 periods; (3) determined Sugiyama failed the 1985–1986 verification; (4) determined Sugiyama and X are related parties within the meaning of 19 U.S.C. § 1677(13)(C) and resorted to BIA; (5) chose 43.29% as BIA for Sugiyama; and (6) determined it was not required to provide Sugiyama with complete computer printouts of all Commerce's calculations. Additionally, the Court holds Commerce abused its discretion in failing to terminate the 1986–1987 review and accordingly vacates the *Final Results* with respect to this review.

On remand Commerce is directed to (1) reexamine Commerce's selection of best information available for the 1981–1982, 1982–1983, 1983–1984, and 1984–1985 administrative reviews; (2) correct computer programming errors in Commerce's constructed value calculations for the 1981–1982 and 1982–1983 review periods; and (3) determine whether certain alleged data input errors by Sugiyama with respect to the 1989–1990 review period warrant correction.

### ORDER

This case having been duly submitted for decision and this Court, after due deliberation, having rendered a decision herein; now, in conformity with said decision, it is hereby

**ORDERED** that the Department of Commerce's final results in *Roller Chain, Other Than Bicycle, From Japan; Final Results of Antidumping Duty Administrative Review,* 57 Fed.Reg. 43,697 (1992) are sustained in part and remanded in part; and it is further

**ORDERED** that on remand Commerce must reexamine its selection of best information available for the 1981–1982, 1982–1983, 1983–1984, and 1984–1985 administrative reviews; and it is further

**ORDERED** that on remand Commerce must correct computer programming errors in its constructed value calculations for the 1981–1982 and 1982–1983 review periods; and it is further

**ORDERED** that on remand Commerce must determine whether certain alleged data input errors by Sugiyama with respect to the 1989–1990 review period warrant correction; it is further

**ORDERED** that remand results are due June 2, 1994. Any comments or responses by the parties to the remand are due June 16, 1994, and shall be limited to fifteen pages. Any rebuttal comments are due June 23, 1994, and shall be limited to ten pages. No extensions of time will be granted for the remand results, comments/responses or rebuttal comments; and it is further

**ORDERED** that the *Final Results* with respect to the 1986–1987 review are vacated; and it is further

**ORDERED** that the *Final Results* are sustained in all other respects.