60 F.3d 843
NOTICE: Federal Circuit Local Rule 47.6(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
 SUGIYAMA CHAIN CO., LTD., I & OC of Japan Co., Ltd. and HKK
Chain Corp. of America, Plaintiffs-Appellants,
v.
The UNITED STATES, Defendant-Appellee.
 No. 94-1512.
 United States Court of Appeals, Federal Circuit.
 July 11, 1995.
Rehearing Denied; Suggestion for Rehearing In Banc Declined
Oct. 5, 1995.
 
 Before MICHEL, SCHALL, and BRYSON, Circuit Judges.
 DECISION
 SCHALL, Circuit Judge.
 
 
 1
 Appellants Sugiyama Chain Co., Ltd., I & OC of Japan Co., Inc., and HKK Chain Corp. of America ("Sugiyama") appeal the decision of the United States Court of International Trade in Sugiyama Chain Co., Ltd. v. United States, 855 F.Supp. 1313 (Ct. Int'l Trade 1994) ("Sugiyama II "). In its decision, the Court of International Trade affirmed the decision of the International Trade Administration ("ITA"), which assessed a 43.29% first-tier best information available ("BIA") rate to the roller chain Sugiyama imported into the United States from April 1, 1985, to May 31, 1986. We affirm.
 
 DISCUSSION
 A.
 
 2
 On September 22, 1992, the ITA published the final results of its annual administrative reviews of the antidumping duty order on Roller Chain, Other Than Bicycle, From Japan, 57 Fed.Reg. 43,697 (1992) ("Final Results "). The antidumping duty order has been in effect since April 12, 1973. Sugiyama II, 855 F.Supp. at 1105. The Final Results pertains to the period April 1, 1981, through March 31, 1987, and the period April 1, 1989, through March 31, 1990. Id. In this case, Sugiyama challenges the conclusions stated in the Final Results with respect to one of the annual reviews.
 
 B.
 
 3
 In April 1986, the American Chain Association ("ACA") requested that the ITA initiate a review for the period April 1, 1985, through March 31, 1986 ("the 1985-1986 review"). Sugiyama Chain Co., Ltd. v. United States, 852 F.Supp. 1103, 1105 (Ct. Int'l Trade 1994) ("Sugiyama I "). The ITA initiated this review. See Initiation of Antidumping Duty Administrative Reviews, 51 Fed.Reg. 24,883 (1986). In April 1987, the ACA requested a review of Sugiyama's roller chain for the period from April 1, 1986, through March 31, 1987 ("the 1986-1987 review"). Sugiyama I, 852 F.Supp. at 1106. The ACA ultimately partially withdrew its request for the 1985-1986 review and the 1986-1987 review, but the ITA decided to proceed with the reviews nonetheless. Id.
 
 
 4
 In December 1990, the ITA investigated the relationship between Sugiyama and one of its home market distributors, X.[1] Id. The investigation revealed that Sugiyama had invested 60% of X's start-up capital, that two directors were on the boards of both corporations, and that Sugiyama was the largest of X's shareholders. The following month, the ITA informed Sugiyama of evidence indicating that Sugiyama and X were related parties for purposes of 19 U.S.C. Sec. 1677(13) (1988). Id. at 1106. Sugiyama denied the existence of any relationship as defined in the statute. Id. Upon further investigation, the ITA determined that such a relationship did in fact exist. Id. The existence of this relationship made it impossible to determine accurate dumping margins without further information.
 
 
 5
 In a July 1991 deficiency letter, the ITA requested further information from Sugiyama regarding its home market sales to unrelated customers for the periods April 1, 1981, through March 31, 1987, and April 1, 1989, through March 31, 1990. Id. The ITA determined that Sugiyama's response to the request for further information was defective and that Sugiyama had "significantly impeded" all the reviews. Id. Among other things, Sugiyama's response to the deficiency letter failed to provide transaction prices, transaction quantities, sales dates, shipment dates, sales reference numbers, or supporting documentation.
 
 
 6
 The ITA initially concluded that Sugiyama's lack of cooperation warranted the application of a first-tier BIA rate, and assigned the 43.29% BIA rate that had been applied to other respondents in a previous roller chain review. Id. In September 1992, the ITA published the Final Results, and concluded that Sugiyama had in fact "substantially cooperated" in all the reviews, except for the 1985-1986 review. Id. For the 1985-1986 review period, the ITA assigned a 43.29% BIA to all of Sugiyama's sales. Id. at 1107. For the 1986-1987 and 1988-1990 periods, the ITA assigned a 43.29% BIA to Sugiyama's unmatched sales. Id. Finally, the ITA assigned a 15.92% rate to Sugiyama's unmatched sales for the 1981-1982 and 1982-1983 periods. Id. On appeal, Sugiyama challenges the application of first-tier BIA only to the 1985-1986 review period.
 
 C.
 
 7
 We review the Court of International Trade's review of an agency decision de novo, U.H.F.C. Co. v. United States, 916 F.2d 689, 696 (Fed.Cir.1990). Thus, we will uphold the court's affirmance of a decision of the ITA unless that decision is unsupported by substantial evidence on the record, or is otherwise not in accordance with the law. 19 U.S.C. Sec. 1516(b)(1)(B) (1988). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Matsushita Elec. Indus. Co. v. United States, 750 F.2d 927, 933 (Fed.Cir.1984).
 
 
 8
 This case presents us with the issues of whether the ITA's review of Sugiyama for the 1985-1986 period was appropriate and whether the ITA correctly applied a first-tier BIA rate. With respect to the former issue, Sugiyama challenges the propriety of the 1985-1986 review, arguing that the ITA misconstrued its statutory mandate, that the review was not properly requested, and that the ITA overstepped its authority in continuing the review after the ACA, which had requested the review, withdrew its request. We have reviewed Sugiyama's contentions with respect to the propriety of the review and have found them to be without merit. The relevant statutes indicate that annual reviews of merchandise subject to antidumping duty orders are not mandatory when the investigations they arise out of are initiated after October 30, 1984. We interpret the statute to require that from October 30, 1984, to October 22, 1986, reviews arising out of investigations initiated prior to October 30, 1984 were mandatory. Because the ITA initiated the 1985-1986 review of Sugiyama prior to October 22, 1986, and further, because the investigation that led to the antidumping duty order pursuant to which the review was undertaken was initiated prior to October 30, 1984, the review was mandatory. It was not error for the ITA to decline to terminate the 1985-1986 review simply because the ACA withdrew its request.
 
 
 9
 With respect to the second issue, Sugiyama has failed to prove that the ITA abused its discretion in applying first-tier BIA to the 1985-1986 period. The ITA has the discretion to apply first- or second-tier BIA depending upon the level of cooperation of the respondent. Allied Signal Aerospace Co. v. United States, 996 F.2d 1185, 1192 (Fed.Cir.1993). Additionally, the ITA is required to use the best information available "whenever a party or any other person refuses or is unable to produce information requested in a timely manner or in the form required, or otherwise significantly impedes an investigation." Antifriction Bearings (Other Than Tapered Roller Bearings) and Parts Thereof From the Federal Republic of Germany, 54 Fed.Reg. 18,992 at 19,033 (1989).
 
 
 10
 In its opinion below, the Court of International Trade held that the ITA's "determination to use first-tier BIA was based on substantial evidence on the record and was in accordance with law." Sugiyama I, 852 F.Supp. at 1114. The court found that multiple factors supported the ITA's decision:
 
 
 11
 First is the failed 1985-86 verification, combined with the severity of the discrepancies and deficiencies, which calls into question the validity of all reported information and documents presented in connection with that review. Second is Sugiyama's failure, despite the Department's good will, to supply a usable computer tape, to report complete information on [home market] sales, and its failure to provide the supporting documentation, which significantly impeded the completion of these administrative reviews. The final factor is Sugiyama's failure to report its relationship with [X].
 
 
 12
 Id. (brackets in original). The court quoted the above language from an internal ITA memorandum, noting that "it would have been more useful" if the ITA had set forth in the Final Results the complete reasoning behind its decision to apply first-tier BIA. Sugiyama seizes upon this dictum to argue that the court's decision upholding the ITA's application of first-tier BIA was legal error. We conclude otherwise.
 
 
 13
 Under Securities Commission v. Chenery Corp., "[i]f [an] administrative action is to be tested by the basis upon which it purports to rest, that basis must be set forth with such clarity as to be understandable." 332 U.S. 194, 196 (1946). See also Ceramica Regiomontana, S.A. v. United States, 810 F.2d 1137, 1139 (Fed.Cir.1987) (a court may "uphold [an agency's] decision of less than ideal clarity if the agency's path may be reasonably determined") (citations omitted) (brackets in original). In the Final Results, the ITA set forth twenty-one comments describing its justification for applying first-tier BIA. We hold that the Final Results, in its entirety, forms an adequate and understandable justification for the ITA's decision to apply first-tier BIA to Sugiyama. The Final Results discusses the same factors--the question of the validity of Sugiyama's reported information; Sugiyama's impediment of the completion of the ITA's administrative reviews; and Sugiyama's failure to report its relationship with X--that were more concisely stated in the internal memorandum of the ITA. For example, the "Department's Position" in response to comments 4, 5, 7, 8, and 9 of the Final Results discusses at length how the ITA could not validate the information submitted in numerous financial and accounting statements. At the same time, the "Background" and "Department's Position" in response to comments 4, 5, 8, 10, 13, 18, and 19 discuss how Sugiyama failed to submit requested information to the ITA and how the submitted information was incomplete. Finally, the "Department's Position" in response to comments 14 and 15 discusses how Sugiyama failed to report its relationship with related company X. From the totality of the comments and the ITA's responses in the Final Results, we find a full and rational explanation, sufficient to pass Chenery muster, for the ITA's decision to apply first-tier BIA. Based on the Final Results, we conclude that the Court of International Trade did not commit legal error in affirming this result.
 
 
 14
 Each side shall bear its own costs.
 
 
 
 [1]
 The name of the home market distributor is given as "X" for confidentiality purposes