**YAMAJI FISHING NET CO., Plaintiff,**

v.

**UNITED STATES, Defendant.**

**Court No. 91–11–00790.**

United States Court of International Trade.

Aug. 13, 1993.

` George R. Tuttle, P.C., George R. Tuttle, III, San Francisco, CA, for plaintiff.

Frank W. Hunger, Asst. Atty. Gen., David Cohen, Director, Civil Div., Commercial Litigation Branch, U.S. Dept. of Justice, Jeffrey M. Telep, Dean Pinkert, Atty. Advisor, Office of the Deputy Chief Counsel for Import Administration, U.S. Dept. of Commerce, Washington, DC, of counsel, for defendant. .

CARMAN, Judge:

Plaintiff moves for judgment upon the agency record pursuant to Rule 56.1 of this Court. Plaintiff seeks review of *Final Results of Antidumping Duty Administrative Reviews: Fishnetting of Man-made Fibers From Japan,* 56 Fed.Reg. 49,456 (1991) (*Final Determination*). Plaintiff requests that the Court remand this matter to Commerce for submission of additional information or determination of a new best information available (BIA) rate. The Court has jurisdiction pursuant to 28 U.S.C. § 1581(c) (1988).

## BACKGROUND

The U.S. Department of Treasury issued an antidumping order in 1972 which covered fishing net made of manmade fibers from Japan. *Fish Netting of Manmade Fibers From Japan,* 37 Fed.Reg. 11,560 (1972). Between 1972 and 1988 Commerce conducted three administrative reviews of the antidumping order, covering various periods of time. *See Fish Netting of Man–Made Fibers From Japan; Final Results of Administrative Review of Antidumping Finding,* 48 Fed.Reg. 43,210 (1983) (*First Review*); *Fish Netting of Man–Made Fibers From Japan; Final Results of Administrative Review of Antidumping Finding,* 49 Fed.Reg. 18,339 (1984) (*Second Review*); *Fishnetting of Man–Made Fibers From Japan; Final Results of Antidumping Duty Administrative Review,* 53 Fed.Reg. 10,264 (1988) (*Third Review*).

In the *First Review,* Yamaji failed to provide questionnaire data for one of the periods under review. As a result, Commerce used BIA and assigned Yamaji a dumping margin of 18.3% for that period. *First Review,* 48 Fed.Reg. at 43,211–12. Commerce assigned Yamaji its previous margin of 18.3% margin for one period of the *Second Review* when it was forced once again to resort to BIA due to Yamaji's failure to respond. *Second Review,* 49 Fed.Reg. at 18,339. During the *Third Review,* Commerce was able to calculate margins based on the information Yamaji provided, thus avoiding the need to resort to BIA. *Third Review,* 53 Fed.Reg. at 10,264.

Commerce's fourth administrative review of the antidumping order, the review at issue, covered three periods: (1) from June 1984 through May 1985; (2) from June 1985 through May 1986; and (3) from June 1986 through May 1987. *Final Determination,* 56 Fed.Reg. at 49,456. On November 15, 1990, Commerce sent plaintiff a supplemental questionnaire asking Yamaji to provide previously submitted information in a computerized format pursuant to 19 C.F.R. § 353.-31(e)(3) (1990). R.Doc. 82. Plaintiff responded that it would be financially impractical for it to comply because it did not own a computer. R.Doc. 67. Because Yamaji failed to provide sales listings on computer tape and adequate information on adjustments for physical differences in the merchandise and the viability of its home market, Commerce resorted to BIA. *Preliminary Results of Antidumping Duty Administrative Reviews and Intent To Revoke in Part: Fishnetting of Man-made Fibers From Japan,* 56 Fed.Reg. 33,246, 33,247 (1991) (*Preliminary Determination*). Yamaji did not submit a brief in response to the preliminary determination.

Commerce subsequently published its final determination in which it determined that Yamaji was "substantially cooperative, despite [its] failure to respond to [Commerce's] requests for additional information and [its] failure to respond to certain requests in the form required." *Final Determination,* 56 Fed.Reg. at 49,457. Commerce assigned Yamaji a BIA margin of 18.3% *ad valorem* which was based on the highest margin for Yamaji from any previous review. *Id.*

## CONTENTIONS OF THE PARTIES

Plaintiff argues 19 C.F.R. § 353.31(e)(3) (1990), was not in effect at the time Commerce initiated Yamaji's annual review. Therefore, according to Yamaji, Commerce improperly applied the regulation to plaintiff in a retroactive manner. In addition, plaintiff claims Commerce violated the Administrative Procedure Act and the Due Process Clause by failing to notify Yamaji of the formal procedures for waiving the computer-

ized data requirement. Yamaji further argues Commerce failed to notify it of the inadequacy of its response as required by 19 C.F.R. § 353.51(b) (1988). Finally, Yamaji contends its assessed margin of 18.3% is penal in nature and, therefore, should not be applied to a respondent found to be substantially cooperative.

Defendant maintains it complied with all statutory, regulatory and due process requirements, and therefore, its decision to resort to BIA was in accordance with law. Furthermore, defendant contends because Yamaji failed to provide current information in the proper format, Commerce was entitled to presume the 18.3% margin assessed against Yamaji in a prior review represented Yamaji's actual margin. Commerce argues it could not have failed to notify Yamaji of waiver procedures regarding the requirement of computerized data because such procedures do not exist. In response to plaintiff's claimed violation of the Administrative Procedure Act, defendant claims Commerce did not engage in rulemaking under the Act.

## STANDARD OF REVIEW

In an action challenging Commerce's use of BIA, this Court must decide whether Commerce's determination is supported by substantial evidence on the record and is otherwise in accordance with law. 19 U.S.C. § 1516a(b)(1)(B) (1988). "Substantial evidence is something more than a 'mere scintilla,' and must be enough reasonably to support a conclusion." *Ceramica Regiomontana S.A. v. United States*, 10 CIT 399, 405, 636 F.Supp. 961, 966 (1986), *aff'd*, 5 Fed.Cir. (T) 77, 810 F.2d 1137 (1987) (citations omitted).

The Court must accord substantial weight to the agency's interpretation of the statute it administers. *American Lamb Co. v. United States*, 4 Fed.Cir. (T) 47, 54, 785 F.2d 994, 1001 (1986) (citations omitted). "An agency's 'interpretation of the statute need not be the *only* reasonable interpretation or the one which the court views as the most reasonable.'" *ICC Indus., Inc. v. United States*, 5 Fed.Cir. (T) 78, 85, 812 F.2d 694, 699 (1987) (emphasis in original) (citation omitted). Where "the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 843, 104 S.Ct. 2778, 2781, 81 L.Ed.2d 694 (1984). However, the agency must not "contravene or ignore the intent of the legislature or the guiding purpose of the statute." *Ceramica Regiomontana*, 10 CIT at 405, 636 F.Supp. at 966 (citations omitted).

## DISCUSSION

### A. Computer Tape Requirement

Yamaji contends Commerce cannot apply the computer tape requirement of 19 C.F.R. § 353.31(e)(3) (1990) to plaintiff's deficiency questionnaire because (1) the regulation is contrary to congressional intent; and (2) such application produces an improper retroactive effect. The applicable regulation according to plaintiff is 19 C.F.R. § 353.46(a)(2) (1988). This regulation requires documents to "be submitted on letter-size paper, double-spaced, not permanently bound, but held securely together," but does not require parties to submit documents on computer tape. *Id.* The Court finds no merit in plaintiff's argument. Contrary to plaintiff's position, 19 C.F.R. § 353.31(e)(3) (1990), not the 1988 regulation upon which plaintiff relies, was in effect when Commerce issued its deficiency questionnaire to Yamaji.

On August 13, 1986, Commerce published its proposed rule and requested comments from the public. 51 Fed.Reg. 29,046. Commerce explained that 19 C.F.R. § 353.31 contained a new paragraph pertaining to the submission of computer tapes and printouts and that nonconforming submissions would be rejected. *Id.* at 29,052. On March 28, 1989, Commerce published the final rule which was to be effective as of April 27, 1989. 54 Fed.Reg. 12,742. The relevant part of the final rule reads as follows:

> *Computer tapes and printouts.* The Secretary may require submission of factual information on computer tape unless the Secretary decides that the submitter does not maintain records in computerized form and cannot supply the requested information on computer tape without unreason-

able additional burden in time and expense. In an investigation or administrative review, the tape shall be accompanied by three copies of any computer printout and three copies of the public version of the printout.

19 C.F.R. § 353.31(e)(3) (1990).

■ Yamaji argues that Commerce's computer tape submissions requirement clearly violates Congress' intent as expressed in the legislative history of § 776(c) of the Trade Agreements Act of 1979. Plaintiff cites the following language:

> To further expedite assessment, the bill authorizes the Authority to require that information be submitted in a particular form and manner if reasonably available. For example, the Authority may require the exporter to furnish information on computer tape if the exporter maintains records in that form, but it may not require the exporter to purchase a computer or computerize information.

H.R.REP. No. 317, 96th Cong., 1st Sess. 69 (1979). Plaintiff contends this legislative history precludes Commerce from demanding computer tapes from any respondent that does not maintain computerized records.

■ "It is an established principle of jurisprudence that where a statute's meaning is clear, that meaning will be controlling, even if relevant legislative history suggests another plausible interpretation." *Al Tech Specialty Steel Corp. v. United States*, 10 CIT 743, 746–47, 651 F.Supp. 1421, 1425 (1986) (citation omitted). A Court may, however, consult legislative history to ensure that application of a statute does not frustrate congressional policy.

Although Congress chose not to adopt the language plaintiff cites when it enacted § 776(c) of the Trade Agreements Act of 1979, the policy conveyed by Congress in its statement is important to the proper interpretation of the antidumping duty laws. The expressed concern of Congress in this piece of legislative history is twofold: (1) to expedite assessment of duties on entries subject to a dumping finding; and (2) to assure that requirements for a particular form for submissions are reasonable. Both of these concerns are addressed in 19 C.F.R. § 353.-31(e)(3). Through the use of computer tapes, Commerce is able to improve the speed and efficiency of document handling. Moreover, Commerce provides a respondent that does not maintain its records in computerized form an opportunity to seek a waiver of the computer tapes requirement when the respondent would be unreasonably burdened in time and expense.

Because the legislative history is from 1979, it does not consider technological developments during the last fourteen years such as the widespread use of computers. Due to improved technology and the reduction in costs associated with computer use, a company may more easily own a computer or at least have access to a computer. In a past review of fishnetting from Japan, Commerce established the cost of having an outside computer company located in Tokyo input relevant data onto a computer diskette would range from $200.00 to $300.00. *Final Results of the 1988/1989 Antidumping Duty Administrative Review; Fishnetting of Man–Made Fibers From Japan*, 55 Fed.Reg. 30,948, 30,949 (1990). The data used to obtain the estimate consisted of a considerable number of transactions and accompanying data entries. *Id.* In fact, this regulation serves to aid congressional intent by satisfying two areas of concern: speed in investigations and fairness to the respondents. The Court holds that congressional policy has not been frustrated by Commerce's use of 19 C.F.R. § 353.31(e)(3).

Plaintiff nevertheless argues that it is per se unreasonable for Commerce to require the submission of computerized cost data when the exporter does not maintain computerized business records, citing *Timken Co. v. United States*, 11 CIT 267, 659 F.Supp. 239 (1987). The Court disagrees with plaintiff's interpretation of *Timken*. The *Timken* Court considered whether Commerce could be compelled to provide a petitioner computer tapes submitted by an exporter. *Id.* The Court merely quoted language from H.R.REP. No. 317, 96th Cong., 1st Sess. 69 (1979). *Id.* at 269–70, 659 F.Supp. at 241. The Court did not discuss the legislative history, because it was not necessary for

resolving the issue before it. Furthermore, because *Timken* was issued prior to the amendment of Commerce's regulations, the Court could not have discussed the legislative history as it applies to 19 C.F.R. § 353.-31(e)(3).

Yamaji maintains *Rhone Poulenc* also supports its argument that the computer tapes requirement cannot apply to a respondent that does not keep computerized records. *See Rhone Poulenc, Inc. v. United States*, 13 CIT 218, 710 F.Supp. 341 (1989), *aff'd*, 899 F.2d 1185 (1990). This Court does not agree with plaintiff's characterization of *Rhone Poulenc*. After determining that 19 C.F.R. § 353.46(a)(2) (1988) does not limit submissions to written documents, the *Rhone Poulenc* Court held Commerce may require those exporters who maintain their records in computerized form to supply information on computer tapes. *Id.* at 221, 710 F.Supp. at 344. The *Rhone Poulenc* opinion does not discuss respondents who do not keep computerized records. In addition, because the Court issued *Rhone Poulenc* prior to the effective date of 19 C.F.R. § 353.31(e)(3), the Court did not address this regulation. The Court holds that plaintiff's reliance on both *Timken* and *Rhone Poulenc* is misplaced.

■ Plaintiff next argues that applying the new regulation to the instant case would have an improper retroactive effect. Yamaji points out that 19 C.F.R. § 353.31(e) (1990) does not include specific language indicating it is applicable to investigations and reviews already under way as of the regulation's effective date. Therefore, according to plaintiff, 19 C.F.R. § 353.51(b) (1988) applies. The Court does not find plaintiff's argument persuasive. Commerce did not apply the regulation retroactively; it applied the regulation prospectively to submissions requested from the date of the new regulation forward. The effective date of the regulation, April 27, 1989, was well before the date Commerce sent Yamaji its deficiency questionnaire, November 15, 1990. As a result, the Court holds that the application of 19 C.F.R. § 353.31(e) (1990) to Yamaji's deficiency questionnaire does not have a retroactive effect.

**B.** *Waiver of Computer Tape Requirement*

■ Yamaji presents an alternative argument in the event the Court holds 19 C.F.R. § 353.31(e) (1990) is applicable to plaintiff's deficiency questionnaire. Plaintiff argues Commerce should have accepted its November 30, 1990 Letter as a request for a waiver and determined that a computer tape submission would be too great of a "burden in time and expense" for Yamaji. *See* 19 C.F.R. § 353.31(e) (1990). This letter states the following:

We regret very much to inform you that it is an impracticable request for us to cope with owing to the following reasons:

It costs us considerable expense to execute your request, as we have no computer here. Therefore, please see our data (Hand writign [sic]) already sent you at first and examine/understand the situation theough [sic] the said data.

(R.Doc. 67). Yamaji maintains Commerce never responded to its request for a waiver, and therefore, Commerce should be required to accept Yamaji's handwritten submission. The Court holds Yamaji's letter did not constitute a request for a waiver of the computer tape submission requirement.

Based on the new regulation, Commerce will assess whether a respondent that does not maintain records in computerized form would incur an unreasonable, additional burden in time and expense by having to supply the requested information on computer tape. 19 C.F.R. § 353.31(e) (1990). Commerce directed Yamaji in the General Instructions to both Commerce's original questionnaire and its deficiency questionnaire that alternate forms of submission were available with Commerce's permission. R.Doc. 144 at 2 ("If you have very few sales, you may consult with the 'official in charge' about alternate forms of data submission."); R.Doc. 82 ("If you have very few sales, Lotus 1-2-3 is an option, but you must first receive permission from the Department.").

Despite Commerce's clear instructions, Yamaji never sought permission to use an alternative format for its submissions. Plaintiff never requested the opportunity to avail itself of the option presented by Commerce in

the form of Lotus 1–2–3, a less expensive computer program. Instead, Yamaji merely stated in its letter to Commerce that it would be expensive to submit information on computer tape and it was therefore not complying. Because Commerce has no established waiver procedures for this situation, a degree of flexibility would appear appropriate for interpreting a respondent's request for waiver.[1] A generous reading of Yamaji's letter, however, does not indicate the letter rises to the level of a request for waiver. Therefore, the Court holds plaintiff's letter is not a request for waiver of the computer tape requirement.

## C. BIA

Yamaji contends Commerce should not have assigned it a 18.3% dumping margin as Commerce found plaintiff to be substantially cooperative. Plaintiff argues Commerce should have used information concerning current conditions rather than Yamaji's previous highest rate.

Commerce must use BIA "whenever a party or person refuses or is unable to produce information requested in a timely manner and *in the form required,* or otherwise significantly impedes an investigation." 19 U.S.C. § 1677e(c) (1988) (emphasis added). When a respondent has substantially cooperated, but has failed to provide the information in the form required, Commerce may consider a particular firm's own prior less than fair value rate. *Allied–Signal Aerospace Co. v. United States,* 11 Fed.Cir. (T) ——, 996 F.2d 1185, 1190, 1192 (1993). The presumption that the highest prior margin is the best information available "reflects a common sense inference that the highest prior margin is the most probative evidence of current margins because, if it were not so,

the importer knowing of the rule, would have produced *current* information showing the margin to be less.". *Rhone Poulenc,* 8 Fed. Cir. (T) at 67, 899 F.2d at 1190–91 (emphasis in original).

In both the original questionnaire and the subsequent deficiency questionnaire, Commerce advised Yamaji that failure to comply would result in Commerce's use of BIA. Despite Commerce's specific requests, Yamaji failed to submit the requested data on computer tapes.[2] Commerce therefore resorted to BIA and used as BIA the higher of (a) the highest calculated rate for a responding firm with shipments during the period or (b) the highest rate for that company from any previous review or from the original investigation. *Final Determination,* 56 Fed.Reg. at 49,457.

In support of its argument that the most recent information must be used as BIA, plaintiff cites *Rhone Poulenc,* 13 CIT at 218, 710 F.Supp. at 341. This Court reads *Rhone Poulenc* as reaching the opposite conclusion. The *Rhone Poulenc* Court held that nothing in the statutes or regulations required Commerce to use the most recent information collected for BIA. *Id.* at 224–26, 710 F.Supp. at 346–47. The Court reasoned that if Commerce were forced to use the most recent information, respondents would be in a position to abuse the system by not cooperating whenever current information is not as advantageous as the most recent past information. *Id.* The Court holds Commerce lawfully assigned Yamaji a margin based on BIA of 18.3%.

Plaintiff objects to Commerce's assessing a lower margin based on BIA to two non-responding parties, Toyama and Fakui. Al-

---

**1.** Plaintiff contends Commerce failed to notify it of the requirements for a formal waiver and thus violated the Administrative Procedure Act and the Due Process Clause. However, there were no formal waiver requirements in either the 1988 or the 1989 versions of the regulations. Accordingly, plaintiff's argument fails.

**2.** In addition, the *Preliminary Determination* indicates Yamaji also failed to submit (1) information on the aggregate of sales of such or similar merchandise in the home market; and (2) infor-

mation on the cost differences attributable to differences in physical characteristics between home market and U.S. merchandise. *Preliminary Determination,* 56 Fed.Reg. at 33,247. The parties, however, focused their briefs on Yamaji's failure to submit information on computer tape. Because the parties have not provided the Court with adequate information concerning this issue and because the Court is able to affirm the final determination on other grounds, the Court does not address the issue of Yamaji's failure to provide the above information.

though these two parties received lower margins, Commerce used the same method in establishing their margins as it did in determining Yamaji's margin: the highest margins for Toyama and Fakui from previous administrative reviews. 49 Fed.Reg. 18,339; 53 Fed.Reg. 10,264. The Court therefore holds that Commerce properly selected Yamaji's previous highest rate as BIA for this investigation.

### D. Due Process

 Yamaji claims further that Commerce violated 19 C.F.R. § 353.51(b) (1988) and thereby deprived Yamaji of due process. Plaintiff maintains Commerce violated this regulation by (1) not providing plaintiff with an opportunity to correct the deficiencies in its submission; and (2) failing to notify plaintiff of its inadequate response. 19 C.F.R. § 353.51(b) states "[a]n opportunity to correct inadequate submissions will be provided if the corrected submission is received in time to permit proper analysis and verification of the information concerned."

Plaintiff's argument fails on both counts. Commerce provided plaintiff an opportunity to remedy the problems of its original submission when Commerce sent it a deficiency questionnaire. *See* R.Doc. 82. Although duly notified through the supplementary questionnaire, Yamaji chose neither to submit information on computer tape nor to obtain a waiver of the computer tape requirement. *See* R.Doc. 67. Upon receipt of Yamaji's letter indicating it would not submit a computer tape, Commerce was under no statutory requirement to inform Yamaji a second time that it must submit the requested information in the proper form.

### Conclusion

After considering all of plaintiff's arguments, the Court holds that the Department of Commerce's final determination is supported by substantial evidence and is otherwise in accordance with law. Therefore, *Final Results of Antidumping Duty Administrative Reviews: Fishnetting of Man-made Fibers From Japan*, 56 Fed.Reg. 49,456 (1991) is sustained and this case is dismissed.

### ORDER

This case having been duly submitted for decision and this Court, after due deliberation, having rendered a decision herein; now, in conformity with said decision, it is hereby

**ORDERED** that plaintiff's motion is denied; and it is further

**ORDERED** that the Department of Commerce's determination in *Final Results of Antidumping Duty Administrative Reviews: Fishnetting of Man-made Fibers From Japan*, 56 Fed.Reg. 49,456 (1991) is sustained; and it is further

**ORDERED** that the action is dismissed.