**DAIDO CORPORATION, Daido Kogyo Co., Ltd. & Enuma Chain Manufacturing Co., Ltd., Plaintiffs,**

v.

**UNITED STATES, Defendant,**

and

**American Chain Association, Defendant–Intervenor.**

**Slip Op. No. 95–108.**
**Court No. 93–06–00311.**

United States Court of International Trade.

June 13, 1995.

**44**

Arent Fox Kintner Plotkin & Kahn, Washington, DC (Patrick F. O'Leary), for plaintiffs.

Frank W. Hunger, Asst. Atty. Gen., David M. Cohen, Director, Civ. Div., Commercial Litigation Branch, U.S. Dept. of Justice (Jeffrey M. Telep), and Patrick V. Gallagher, Jr., Attorney–Advisor, Office of the Chief Counsel for Import Admin., U.S. Dept. of Commerce, Washington, DC, of counsel, for defendant.

Covington & Burling (David R. Grace), and David E. McGiffert, Washington, DC, for defendant-intervenor.

## OPINION

CARMAN, Judge:

Defendant–Intervenor American Chain Association (ACA) moves for judgment upon the agency record pursuant to Rule 56.2 of this Court. ACA contests the Department of Commerce's (Commerce) calculation of plaintiff Enuma Chain Manufacturing Company Ltd.'s final dumping margin pursuant to Commerce's April 1, 1990, through March 31, 1991, administrative review. *See Roller Chain, Other Than Bicycle, From Japan,* 58 Fed.Reg. 30,769 (Dep't Comm.1993) (final results) (*Final Results* ).[1] The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1581(c) (1988).

### BACKGROUND

Plaintiffs Enuma Chain Manufacturing Company, Ltd. (Enuma) and Daido Kogyo Company, Ltd. (Daido) are Japanese manufacturers of roller chain. Plaintiff Daido Corporation imports the roller chain Enuma and Daido manufacture. Defendant–Intervenor ACA is a trade association, a majority of whose members manufacture roller chain in the United States.

At ACA's request, Commerce began an administrative review of the outstanding antidumping duty order with respect to plaintiffs Enuma and Daido. *See Roller Chain, Other Than Bicycle, From Japan,* 57 Fed. Reg. 41,471, 41,471 (Dep't Comm.1992) (prelim. results). The period of review was April 1, 1990, through March 31, 1991. Enuma, however, submitted certain home market sales data corresponding to its June 1, 1990, through May 31, 1991, fiscal year. *See Final Results,* 58 Fed.Reg. at 30,770. Specifically,

---

1. In the *Final Results,* Commerce decided not to revoke the antidumping finding on roller chain, other than bicycle, from Japan with respect to Enuma and Daido "[b]ased on [Commerce's] analysis of the comments received, and because of certain privileged information in [Commerce's] possession." *See Final Results,* 58 Fed. Reg. at 30,773–74. Earlier in these proceedings, Commerce requested, and the Court granted, a remand so that Commerce could reconsider its decision not to revoke in light of additional information that existed prior to the publication of the *Final Results. See Daido Corp. v. United States,* 18 CIT ——, ——, 869 F.Supp. 967, 969 (1994). In its remand determination, Commerce again refused to revoke. *See id.* at ——, 869 F.Supp. at 969. This Court upheld Commerce's remand determination. *See id.* at ——, 869 F.Supp. at 973–74.

although Enuma did submit a home market sales listing including all sales made during the period of review, Enuma's home market price adjustments were derived from Enuma's June 1, 1990, through May 31, 1991, fiscal year data rather than from the April 1, 1990, through March 31, 1991, period of review. *Id.*

ACA urged Commerce to reject Enuma's home market response in its entirety and assign Enuma a margin based on the best information available (BIA) because "while Enuma's home market sales listing include[d] all sales within the review period, the deductions and charges [were] based on Enuma's fiscal year and, therefore, include[d] data from sales outside the period of review." *Id.* ACA also requested Commerce treat Enuma as an "uncooperative" party and apply an adverse BIA margin to the final results. *Id.* Furthermore, ACA argued, even if Commerce were "to use Enuma's home market response for the final results, it should assign a value of zero as BIA to all adjustments to Enuma's home market transactions for the months of April and May 1990 because the costs and adjustments associated with such transactions were not included in Enuma's calculation of its claimed adjustments." *Id.*

Commerce rejected ACA's contention that Commerce must reject Enuma's home market response in its entirety. Commerce explained ACA had correctly observed

> that Enuma's home market price adjustments [were] derived from June 1, 1990–May 31, 1991, fiscal year data, rather than from April 1, 1990–March 31, 1991, review period data, but this does not justify rejection of Enuma's home market response. Enuma's fiscal year differs from the administrative review period by only two months, and all of Enuma's adjustments are calculated using fiscal data allocated to all sales. The adjustments are not specific to sales, models, or even months. The deductions in question are constant costs that generally vary little over time. Given our knowledge of the roller chain industry, we have no evidence from which to conclude that basing the price adjustments in question on fiscal year data rather than review period data would significantly af-

fect the adjustments. In addition, [ACA] has provided no evidence, and we discovered no such evidence during verification, to invalidate this conclusion.... [W]e have followed this approach in the past.

*Id.* (citation omitted). Accordingly, in its calculation of Enuma's margin, Commerce used the fiscal year home market price adjustment data Enuma submitted "as reasonable home market price adjustments." *Id.*

Commerce rejected ACA's other contentions relating to BIA as well. First, Enuma was not "uncooperative," Commerce explained, because Enuma responded to Commerce's questionnaire and all supplemental requests for information. *Id.* Commerce found Enuma's responses were not "substantially inadequate" as ACA alleged, and did not "significantly impede" Commerce's review. *Id.* Second, Commerce disagreed with ACA's contention that Commerce should assign a value of zero as BIA to all adjustments to Enuma's home market transactions in April and May 1990 because the costs and adjustments associated with those transactions were not included in Enuma's calculation of its claimed adjustments. *Id.* Commerce explained that "[a]lthough Enuma's home market price adjustments are derived from fiscal year data ... Enuma has satisfied its burden of proof and is entitled to the adjustments" based on Commerce's analysis and verification of the information submitted. *Id.* at 30,771.

CONTENTIONS OF THE PARTIES

A. *American Chain Association*

ACA contends the final dumping margin calculated for Enuma is not supported by substantial evidence on the record and is otherwise not in accordance with law. In so doing, ACA presents three major arguments. First, ACA argues Commerce relied on flawed and incomplete data by using Enuma's substituted home market cost data from outside the period of review. Commerce's purported explanation for use of the substituted data, ACA maintains, "is premised upon the *assumption* that Enuma's home market costs and charges varied 'little over time.'" (ACA's Br. in Supp. of Mot. for J.

**46**

on Agency R. (ACA's Br.) at 20 (quoting *Final Results*, 58 Fed.Reg. at 30,770).) ACA asserts that Commerce, however, "had no information whatsoever as to cost levels in April and May 1990." (*Id.* (emphasis omitted).) Furthermore, ACA complains, Commerce's knowledge of the roller chain industry provides no justification for use of Enuma's substituted data because "[p]rices, charges, and other costs vary from producer-to-producer. This is precisely why company-specific margins are calculated." (*Id.* at 21.)

Second, ACA argues that Commerce has a long-standing practice whereby a foreign respondent seeking a favorable fair market value adjustment bears the burden of proof in establishing the claim. Furthermore, " '[t]he law does not permit a party to pick and choose information it wishes to present to the agency.' " (*Id.* at 17 (quoting *Hussey Copper, Ltd. v. United States*, 17 CIT ——, ——, 834 F.Supp. 413, 428 (1993) (citation omitted)) (further citations omitted).) ACA complains that in the present case, although ACA repeatedly requested Commerce seek the missing data and explore the issue at verification, "there is no evidence on the record that [Commerce] ever attempted to determine whether the costs during April and May 1990 were comparable to the fiscal year data reported by Enuma." (*Id.* at 19.) Instead, ACA claims, Commerce relied on Enuma's response and unilateral decision not to submit the requested information to the agency, thereby impermissibly shifting to ACA the burden of proof to invalidate Commerce's reliance on Enuma's data.

Finally, ACA argues Commerce is required to use adverse BIA when a respondent refuses or is unable to produce requested information in a timely manner. The BIA rule currently applied, ACA asserts, is a two-tier test. According to ACA, Commerce has occasionally deviated from the two-tier test, but always in a manner adverse to the non-complying respondent. Commerce, ACA argues, has no latitude when a respondent refuses or is unable to supply relevant data to Commerce. ACA claims, therefore, that because Enuma did not supply the requested adjustment data for certain home market transactions, Commerce was required to use BIA. In light of the arguments presented, ACA requests this Court remand the *Final Results* to Commerce for a determination of whether Enuma is an "uncooperative" party and with instructions to issue a new final administrative determination in which Enuma is assigned a final margin based on BIA in accordance with Commerce's two-tier approach.[2]

### B. *The Department of Commerce*

Commerce contends its decision to use Enuma's fiscal year expense data to allocate expense adjustments to Enuma's home market sales within the period of review is supported by substantial evidence and is otherwise in accordance with law. Specifically, Commerce argues its reliance on Enuma's questionnaire responses and verified fiscal year expense data in Commerce's allocation of Enuma's expenses and calculation of Enuma's dumping margin was a reasonable exercise of the agency's discretion. Under the applicable statute and regulations, Commerce reasons, adjustments to foreign market value are made when the party alleging entitlement thereto establishes entitlement to the satisfaction of the administering authority. Here, because Enuma was unable to supply sales-related expenses for April and May 1990, Commerce insists it either had to consider the validity of the fiscal year information supplied or use another proxy for Enuma's expense adjustments. Commerce alleges it reasonably chose the former because the fiscal year information contained no fundamental flaws or discrepancies warranting total rejection, the expenses were constant over time, and, under Commerce's

**2.** In its motion, ACA also argued that Commerce acted contrary to law when it rejected a request by ACA to "update" information on Enuma and Daido between the end of the last period Commerce reviewed and the publication date of a tentative revocation of the outstanding antidumping duty order. (*See* ACA's Br. at 25–30.) ACA argued that Commerce was required to perform this review before proceeding with revocation. (*See id.* at 30.) ACA informed this Court in a telephone conference that this argument was effectively mooted by the Court's last opinion in this case in which the Court upheld Commerce's determination *not* to revoke. *See supra* note 1. Accordingly, the Court will not address this contention.

methodology for allocation of expenses, any differences between Enuma's fiscal year and period of review expenses "would have had little or no effect on the calculation of the foreign market value." (Def.'s Mem. in Opp'n at 13–14.)[3] Contrary to ACA's contention that Commerce's determination that Enuma's costs and expenses are constant over time is not supportable because of the missing data, Commerce claims "[t]he expense data from April and May 1990 is irrelevant because, based on Commerce's analysis of all Enuma's financial data, the fiscal year data reflected Enuma's expense experience" during the period of review. (*Id.* at 15.) Commerce alleges this conclusion is not belied by ACA's claim that Commerce may not rely upon its experience with the roller chain industry because producer prices, charges, and costs vary. Commerce responds its "analysis used only Enuma's fiscal data to allocate Enuma's expenses for calculation of Enuma's margin." (*Id.*)

Commerce further argues it reasonably exercised its discretion in deciding not to resort to adverse BIA to calculate Enuma's dumping margin. Commerce explains it accepted as reasonable Enuma's explanation that the company could not provide the information requested within the time Commerce provided. A rejection of Enuma's claims for expense adjustments and an assignment of BIA, Commerce asserts, would have been both inconsistent with the statute and case law and unsupported by the facts. According to Commerce, the BIA rule addresses accuracy and timeliness of factual data. When a respondent cannot provide information, Commerce claims it does not penalize that respondent by resorting to punitive BIA. Here, Commerce argues, the use of the fiscal year expense data as a proxy was reasonable because Enuma did not refuse to cooperate and made its best efforts to supply the re-

quested data in the time allotted. Furthermore, Commerce verified the information as sufficiently reliable for its purposes. Thus, Commerce argues "use of adverse BIA for Enuma's entire response would be inappropriate because Enuma produced cost data to the satisfaction of Commerce." (*Id.* at 20–21.)

### C. *Plaintiffs*

Plaintiffs dispute ACA's contention that Enuma was an uncooperative respondent. According to plaintiffs, Enuma relied on past practice in submitting home market sales and adjustment data from its fiscal year in response to Commerce's questionnaire. (Pls.' Resp. at 8 (citing *Roller Chain Other Than Bicycle From Japan,* 56 Fed.Reg. 23,277, 23,278 (Dep't Comm.1991) (prelim. results and intent to revoke in part)).) When Enuma subsequently received a letter dated January 29, 1992, from Commerce's Office of Antidumping Compliance requesting period of review home market sales and charges data, Enuma claims it submitted sales data for the entire period of review.[4] Enuma's submission, however, still contained deductions based on Enuma's fiscal year "because there was simply not enough time to revise the deductions and input these onto the computer tape within [Commerce's] deadline." (*Id.* at 10.)

In support of Enuma's actions, plaintiffs argue 19 U.S.C. § 1677e(c) does not speak to that which constitutes an inadequate questionnaire response and, consequently, delegates that determination to Commerce. Additionally, plaintiffs assert, because Commerce concluded the period of review adjustments could be calculated using Enuma's fiscal year data and subsequently properly computed these deductions, "there is a rational connection between the facts and [Com-

---

**3.** Commerce explains the methodology used to allocate Enuma's expenses as follows:

> Commerce ... divided the total inland freight expenses incurred during the fiscal year by the total weight of roller chain shipped in the [period of review]. The resulting coefficient, expressed in yen per kilogram, constituted a ratio of inland freight expense per unit roller chain sold in the [period of review]. The coefficient was then multiplied by the number of

kilograms in each shipment to determine the amount of inland freight expense for that shipment. Commerce employed a similar expense allocation for home market packing costs, imputed credit, and imputed inventory carrying costs.

(Def.'s Mem. in Opp'n at 14 (citation omitted).)

**4.** Enuma reports it did so after a two-day extension. (*See* Pls.' Resp. at 10.)

merce's] conclusion not to use adverse BIA for alleged unresponsiveness." (*Id.* at 13 (internal quotations omitted).) Furthermore, plaintiffs assert that the signatory of the letter dated January 29, 1992, is not the "administering authority" to whom 19 U.S.C. § 1677e(c) delegates authority.[5] Plaintiffs argue the administering authority's determination in the *Final Results* that Enuma's submitted data was adequate renders Enuma's alleged partial non-response[6] to the letter irrelevant.

Plaintiffs also dispute ACA's contention that Commerce abused its discretion in computing Enuma's foreign market value adjustments for period of review sales using Enuma's fiscal year data. Plaintiffs argue 19 U.S.C. § 1677b(a) grants the administering authority discretion in computing foreign market value adjustments. Here, plaintiffs argue, Commerce's exercise of that discretion was reasonable. First, plaintiffs assert, the period of review and fiscal year data were out of sync for only two months. Second, plaintiffs argue, "the fact that all adjustments were computed by an allocation of year-long data . . . indicates that any temporary fluctuations or aberrations in the costs will be ironed out." (*Id.* at 18 (footnote omitted).) Third, plaintiffs argue Commerce correctly stated that the " 'deductions in question are constant costs that vary little over time.' " (*Id.* (citing *Final Results*, 58 Fed.Reg. at 30,770).) According to plaintiffs, evidence indicates that "use of June 1989–May 1990 fiscal year data would have made little difference in the [foreign market values] for April–May 1990." (*Id.*) Plaintiffs conclude that because Commerce has the discretion to compute adjustments and that discretion was reasonably exercised, the burden shifted to ACA to demonstrate that

Commerce abused its discretion. ACA, plaintiffs claim, has not met this burden.

STANDARD OF REVIEW

■ The appropriate standard for the Court's review of a final determination by Commerce is whether the agency's determination is "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B) (1988). "Substantial evidence is something more than a 'mere scintilla,' and must be enough reasonably to support a conclusion." *Ceramica Regiomontana, S.A. v. United States*, 10 CIT 399, 405, 636 F.Supp. 961, 966 (1986) (citations omitted), *aff'd*, 5 Fed.Cir. (T) 77, 810 F.2d 1137 (1987). "[T]he possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." *Consolo v. Federal Maritime Comm'n*, 383 U.S. 607, 620, 86 S.Ct. 1018, 1026, 16 L.Ed.2d 131 (1966) (citations omitted).

■ Furthermore, "[a]gency interpretations of statutes which they are charged with administering shall be sustained if permissible, unless Congress has directly spoken to the precise question at issue." *Rhone Poulenc, Inc. v. United States*, 8 Fed.Cir. (T) 61, 67 n. 9, 899 F.2d 1185, 1190 n. 9 (1990) (citing *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842–45, 104 S.Ct. 2778, 2781–83, 81 L.Ed.2d 694 (1984)); *see U.H.F.C. Co. v. United States*, 9 Fed.Cir. (T) 1, 10, 916 F.2d 689, 698 (1990) ("It is well settled that an agency's interpretation of the statute it has been entrusted by Congress to administer is to be upheld unless it is unreasonable.") (citations omitted).

---

**5.** According to plaintiffs, the Secretary of Commerce is the administering authority to whom the statute refers. (*See* Pls.' Resp. at 13 n. 14.) Plaintiffs state that "[i]n turn, the Secretary of Commerce has subdelegated the responsibilities of the 'administering authority' to the Assistant Secretary for Import Administration." (*Id.* (citations omitted).) The letter dated January 29, 1992, to which plaintiffs refer was signed "Edward Yang, Director, Division I, Office of Antidumping Compliance." (Letter from Edward Yang, Director, Division I, Office of Antidumping

Compliance, to Mr. Takachi, Enuma, Daido Corporation (dated Jan. 29, 1992), *reprinted in* Pls.' App. 3, Doc. No. 9.)

**6.** Plaintiffs argue the inability to compute separate charges and deductions for the two months out of sync with the period of review was the "only time Enuma did not fully respond" to a request for information from Commerce. (Pls.' Resp. at 12.)

DISCUSSION

The present case raises the question of Commerce's discretion in determining what constitutes a complaint response to a data request made by Commerce in the course of an antidumping administrative review. To answer this question, the Court first turns to the governing statute and regulation.

Section 1677e(c) of title 19 addresses Commerce's use of BIA. That section reads in full as follows:

**(c) Determinations to be made on best information available.**

In making their determinations under this subtitle, the administering authority and the Commission shall, whenever a party or any other person refuses or is unable to produce information requested in a timely manner and in the form required, or otherwise significantly impedes an investigation, use the best information otherwise available.

19 U.S.C. § 1677e(c) (1988). Commerce's regulation governing the use of BIA substantially mirrors the statute. That regulation states in relevant part as follows:

**§ 353.37 Best information available**

(a) *Use of best information available.* The Secretary will use the best information available whenever the Secretary:

(1) Does not receive a complete, accurate, and timely response to the Secretary's request for factual information; or

(2) Is unable to verify, within the time specified, the accuracy and completeness of the factual information submitted.

19 C.F.R. § 353.37(a) (1990). This statutory and regulatory language requires Commerce to use BIA under certain circumstances.[7]

■■■ However, these circumstances must precede Commerce's resort to BIA. Specifically, 19 U.S.C. § 1677e(c) "clearly requires *noncompliance with an information request* before resort to the best information rule is justified, whether due to refusal or mere inability." *Olympic Adhesives, Inc. v. United States,* 8 Fed.Cir. (T) 69, 79, 899 F.2d 1565, 1574 (1990) (citing as example *Daewoo Elecs. Co. v. United States,* 13 CIT 253, 264–66, 712 F.Supp. 931, 944 (1989), *aff'd in part and rev'd in part,* 11 Fed.Cir. (T) ——, 6 F.3d 1511 (1993))[8]; *Outokumpu Copper Rolled Prods. AB v. United States,* 17 CIT 848, 853, 829 F.Supp. 1371, 1376 (1993) (quoting *Olympic Adhesives,* 8 Fed.Cir. (T) at 79, 899 F.2d at 1574) (further citation omitted). Additionally, the legislative history of section 1677e(c) does not appear to dispel the conclusion that the discretion afforded to Commerce in its administration of the antidumping laws[9] includes Commerce's discretion to

---

7. This conclusion is supported by legislative history and by case law. *See* S.Rep. No. 249, 96th Cong., 1st Sess. 98 (1979), *reprinted in* 1979 U.S.C.C.A.N. 381, 484; *Allied–Signal Aerospace Co. v. United States,* 11 Fed.Cir. (T) ——, ——, 996 F.2d 1185, 1189–90 (1993); *Mantex, Inc. v. United States,* 17 CIT 1385, 1407, 841 F.Supp. 1290, 1309 (1993); *Yamaji Fishing Net Co. v. United States,* 17 CIT 889, 895, 830 F.Supp. 1502, 1508 (1993), *aff'd,* 48 F.3d 1234 (Fed.Cir. 1995) (table) (not cited for precedent).

8. In *Olympic Adhesives,* the Court of Appeals for the Federal Circuit (CAFC) made its statement in reference to 19 U.S.C. § 1677e(b) (1982). In 1988, section 1677e(b) was redesignated as section 1677e(c). *See Olympic Adhesives,* 8 Fed.Cir. (T) at 69, 899 F.2d at 1567 (citing Omnibus Trade and Competitiveness Act of 1988, Pub.L. No. 100–418, § 1331(1), 102 Stat. 1107, 1207 (codified as amended at 19 U.S.C. § 1677e)).

9. The CAFC has recognized the broad discretion generally afforded to the ITA in its administra-

tion of the antidumping laws. As the CAFC has observed,

The Tariff Act of 1930, as amended by the Trade Agreements Act of 1979, establishes an intricate framework for the imposition of antidumping duties in appropriate circumstances. The number of factors involved, complicated by the difficulty in quantification of these factors and the foreign policy repercussions of a dumping determination, makes the enforcement of the antidumping law a difficult and supremely delicate endeavor. The Secretary of Commerce (Secretary) has been entrusted with responsibility for implementing the antidumping law. The Secretary has broad discretion in executing the law.

*Smith–Corona Group v. United States,* 1 Fed.Cir. (T) 130, 131–32, 713 F.2d 1568, 1571 (1983) (footnotes omitted) (quoted in *Daewoo Elecs. Co., Ltd. v. International Union of Elec., Elec., Technical, Salaried and Mach. Workers,* 11 Fed.Cir. (T) ——, ——, 6 F.3d 1511, 1516 (1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 2672, 129 L.Ed.2d 808 (1994)), *cert. denied,* 465 U.S. 1022, 104 S.Ct. 1274, 79 L.Ed.2d 679 (1984).

determine whether a respondent has complied with an information request. *See* S.Rep. No. 249 at 98; H.R.Rep. No. 317, 96th Cong., 1st Sess. 77 (1979); *cf. Timken Co. v. United States*, 18 CIT ——, ——, 852 F.Supp. 1122, 1125 (1994) ("It is well-established ... that Commerce has broad discretion with regard to when the use of BIA is appropriate.") (citing *Olympic Adhesives*, 8 Fed.Cir. (T) at 76, 899 F.2d at 1571–72). As long as Commerce stays within the boundaries of the law in the exercise of its discretion, the Court will uphold the agency's action. *See Smith–Corona*, 1 Fed.Cir. (T) at 132, 713 F.2d at 1571 ("While the law does not expressly limit the exercise of [the Secretary's] discretion with precise standards or guidelines, some general standards are apparent and these must be followed. The Secretary cannot, under the mantle of discretion, violate these standards or interpret them out of existence."). Based on the record in the present case, the Court cannot find Commerce's determination is not in accordance with law or unsupported by substantial evidence.

■ Commerce explains in the *Final Results* that it found Enuma's response compliant. *See Final Results*, 58 Fed.Reg. at 30,-770. Although Enuma apparently answered Commerce's letter dated January 19, 1992, with sales adjustment data covering June 1, 1990, to May 31, 1991, the record reveals Commerce was satisfied with Enuma's response and found it fully compliant. *See, e.g., id.* ("Enuma has provided responses to [Commerce's] questionnaire and all supplemental requests for information, none of which have been 'substantially inadequate'...."); *id.* at 30,771 ("Although Enuma's home market price adjustments are derived from fiscal year data rather than [period of review] data, Enuma has satisfied its burden of proof and is entitled to the adjust-

ments."). Simply because Commerce may not have informed Enuma explicitly through correspondence that Enuma's response had been accepted as complete prior to issuance of the *Final Results* does not negate Commerce's acceptance of the data.[10] Through Commerce's use of Enuma's data and stated acceptance of that data in the *Final Results*, this Court finds Commerce, in its discretion, deemed Enuma's submission of fiscal year sales adjustment data a compliant response to Commerce's inquiries.[11]

Commerce's determination is supported by substantial evidence and is otherwise in accordance with law. In the *Final Results*, Commerce correctly pointed out that Enuma's fiscal year home market price adjustment data differed from the period of review by only two months. *Id.* at 30,770. Commerce's explanation as to how the adjustments were calculated is particularly persuasive. Commerce explained that "all of Enuma's adjustments are calculated using fiscal data allocated to all sales. The adjustments are not specific to sales, models, or even months." *Id.* Furthermore, despite ACA's contention that Commerce's explanation for the use of Enuma's data "is premised upon the *assumption* that Enuma's home market costs and charges 'varied little over time,' "[12] the Court observes the *Final Results* indicate Commerce considered all of the data submitted to reach its conclusion. *See id.* at 30,771 ("Enuma has satisfied its burden of proof and is entitled to the adjustments. Enuma is entitled to the adjustments at issue *based on our analysis and verification of the information submitted*.") (emphasis added).

ACA argues that the home market cost data at issue was in Enuma's sole possession, and that Enuma did not submit the data to Commerce notwithstanding ACA's repeated requests Commerce seek the data. ACA

---

**10.** The Court notes that ACA and Enuma had the opportunity to submit comments to Commerce regarding Commerce's use of Enuma's data prior to the issuance of the *Final Results*. *See Final Results*, 58 Fed.Reg. at 30,769–71.

**11.** The Court's analysis is consistent with a major purpose of BIA—to permit Commerce, and not respondents, to control antidumping investigations. *See Allied–Signal*, 11 Fed.Cir. (T) at ——, 996 F.2d at 1191 (" '[T]he ITA cannot be left

merely to the largesse of the parties at their discretion to supply the ITA with information.' ") (quoting *Olympic Adhesives*, 8 Fed.Cir. (T) at 76, 899 F.2d at 1571). Commerce could have adjudged Enuma non-compliant and used BIA, but did not.

**12.** (ACA's Br. at 20 (quoting *Final Results*, 58 Fed.Reg. at 30,770).).

urges Commerce's refusal to seek the information from Enuma placed an impermissible burden of proof upon ACA contrary to the policies underlying the applicable statute and regulations. (ACA's Br. at 21–22 (citing *Freeport Minerals Co. v. United States*, 4 Fed.Cir. (T) 16, 20, 776 F.2d 1029, 1033 (1985)).) The Court notes, contrary to ACA's contention, Commerce's actions in the present case did not impermissibly place the burden of proof on ACA in contravention of *Freeport Minerals*. Enuma submitted data that Commerce deemed as compliant and responsive to Commerce's requirements in conducting its investigation in its capacity as the administrative supervisor of the anti-dumping laws. Based upon all of the circumstances presented in this case as discussed above, this Court holds Commerce's decision to accept Enuma's data as responsive and compliant was reasonable. Furthermore, the Court notes that ACA does not complain of a lack of access to the information upon which Commerce based its decision, or that the information was outdated as it was in *Freeport Minerals*.

The Court observes the instant case is somewhat analogous to *Timken Co. v. United States*, 18 CIT ——, 852 F.Supp. 1122 (1994). In *Timken*, the plaintiff argued the respondents did not provide Commerce with all requested cost of production information, and accordingly, Commerce was required to use BIA in its determination. *Timken*, 18 CIT at ——, 852 F.Supp. at 1125. In response, Judge Tsoucalas of this Court explained the "plaintiff is quite correct that Commerce is required to use BIA under certain circumstances.... It is well-established, however, that Commerce has broad discretion with regard to when the use of BIA is appropriate." *Id.* at ——, 852 F.Supp. at 1125 (citing *Olympic Adhesives*). Because it was not clear to the Court, however, "whether Commerce [had] received all the data it requested ... and, if it did not, whether Commerce [had] deemed the missing data unnecessary," the Court remanded. *Id.* at ——, 852 F.Supp. at 1126. The Court instructed that if indeed [respondents] did not completely respond to the request for data without instruction from Commerce to do so, Commerce is required to recalculate [respon-

dents'] dumping margin using the best information otherwise available. If, however, Commerce did receive all the data *or exercise its broad discretion in this matter and deemed the missing information unnecessary, then the dumping margin need not be recalculated.*

*Id.* at ——, 852 F.Supp. at 1126 (emphasis added).

Here however, unlike *Timken*, the *Final Results* clearly indicate Commerce did deem Enuma's response compliant with Commerce's requests for data. *See Final Results*, 58 Fed.Reg. at 30,770. Because Commerce's determination is supported by substantial evidence on the record and is otherwise in accordance with law, no remand is warranted in the instant case.

### CONCLUSION

The Court sustains the final results of Commerce's administrative review as presented in *Roller Chain, Other Than Bicycle, From Japan*, 58 Fed.Reg. 30,769 (Dep't Comm.1993) (final results) as the results pertain to the claims of American Chain Association. The Court denies American Chain Association's motion for judgment on the agency record and dismisses this action.

### JUDGMENT

This case having been duly submitted for decision and this Court, after due deliberation, having rendered a decision herein; now, in conformity with said decision, it is hereby

**ORDERED** that the final results of Commerce's administrative review in *Roller Chain, Other Than Bicycle, From Japan*, 58 Fed.Reg. 30,769 (Dep't Comm.1993) (final results), is sustained insofar as those results pertain to the claims of intervenor American Chain Association; and it is further

**ORDERED** that intervenor American Chain Association's Rule 56.2 Motion is denied; and it is further

**ORDERED** that this action is dismissed.