46 CCPA

**ARIS GLOVES, INC.**

v.

**UNITED STATES.**

Customs Appeal No. 4936.

United States Court of Customs
and Patent Appeals.

Dec. 1, 1958.

Mary Rehan and Brooks & Brooks, New York City (Thomas J. McKenna, New York City, of counsel), for appellant.

George Cochran Doub, Asst. Atty. Gen., and Richard E. FitzGibbon, Chief, Customs Section, New York City, for the United States.

Before O'CONNELL, Acting Chief Judge, and WORLEY, RICH, and MARTIN, Judges.

RICH, Judge.

This appeal is from the decision of the United States Customs Court, First Division, 154 F.Supp. 203, C.D.

1854,[1] overruling appellant's protest, and holding that certain women's gloves were dutiable as classified, under paragraph 1532(a) of the Tariff Act of 1930, as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade (GATT), T.D. 52739, at 35 percent ad valorem. 19 U.S.C.A. § 1001, par. 1532 (a).

The importer, appellant herein, claims that said gloves should be dutiable under the same paragraph of the Tariff Act of 1930, 1532(a), but under the modification made by GATT itself, at 25 percent ad valorem, basing its claim on the contention that the Torquay Protocol to GATT is invalid, at least insofar as the increase in duty on the involved gloves is concerned, due to the failure of the government to give "reasonable public notice" of the intention to negotiate the Torquay Protocol.

The merchandise here involved consists of women's gloves in chief value of leather, seamed in part by hand and in part by machine, not lined and not trimmed with fur and not over twelve inches long.

The case was submitted to the Customs Court on an agreed statement of facts, to wit: That GATT reduced the duty on gloves such as those imported herein from 50% ad valorem to 25% ad valorem; that the Torquay Protocol to Gatt provided for an upward modification of the rate of duty on such gloves to 35% ad valorem; that at the time negotiations were undertaken for the Torquay Protocol, namely April 11, 1950, Executive Order 10082 of October 5, 1949. (14 F.R. 6105), 19 U.S.C.A. § 1351 note, provided *inter alia*, that before entering into the negotiation of a proposed trade agreement, the Trade Agreements Committee shall cause notice of intention to negotiate such agreement, together with a list of articles to be considered, to be published in the Federal Register, and also cause such notice together with such list or a statement as to its availability to be published in the Department of State Bulletin, Treasury Decisions, and the Foreign Commerce Weekly; that notice of intention to negotiate and a list of articles to be considered were published in the Federal Register, notice with a statement of the availability of the list was published on the Foreign Commerce Weekly, notice without the list or statement as to its availability was published in the Department of State Bulletin, and nothing here pertinent was published in the Treasury Decisions.

At the time of the negotiation of the Torquay Protocol, Section 4 of the Trade Agreements Act of 1934 (48 Stat. 943, as amended, 63 Stat. 698), 19 U.S.C.A. § 1354, amending the Tariff Act of 1930, provided in part, as follows:

"Before any foreign trade agreement is concluded with any foreign government or instrumentality thereof under the provisions of this Act, *reasonable public notice of the intention to negotiate an agreement* with such government or instrumentality shall be given in order that any interested person may have *an opportunity to present his views to the President, or to such agency as the President may designate, under such rules and regulations as the President may prescribe;* * * *" (Emphasis ours.)

The Federal Register Act, Section 8 (44 U.S.C. 308, 44 U.S.C.A. § 308, 49 Stat. 502) at that time provided, *inter alia*, that

"Whenever notice of hearing or of opportunity to be heard is required or authorized to be given by or under an Act of the Congress, or may otherwise properly be given, the notice shall be deemed to have been duly given to all persons residing within the continental United States (not including Alaska), except in cases where notice by publication is insufficient in law, if said notice shall be published in the Federal Register * * *."

---

[1]. Motion for rehearing denied, Abstract 61047.

Section 12 of the same act (44 U.S.C. 312, 44 U.S.C.A. § 312, 49 Stat. 503) provided:

"Nothing in this Act shall be construed to apply to treaties, conventions, protocols, and other international agreements, or proclamations thereof by the President."

The sole issue to be decided here, as it was below, is whether "reasonable public notice of the intention to negotiate" the Torquay protocol was given, as required by statute.

The Customs Court, one judge dissenting, said, "we are of opinion and hold that reasonable public notice of intention to negotiate the Torquay protocol, supra, was given and that such trade agreement became effective * * *." It rested this decision on several grounds but there are only two which we find it necessary to consider.

■ First, there is the question of the construction of section 4 of the Trade Agreement Act of 1934, supra. The Customs Court reasoned that the clause "under such rules and regulations as the President may prescribe" does not modify the clause "reasonable public notice of the intention to negotiate an agreement," but only the clause immediately preceding it, namely, "an opportunity to present his views to the President, or to such agency as the President may designate." Thus, the court felt, the public notice is not required *by statute* to be given "under such rules and regulations as the President may prescribe" and therefore the provisions of Executive Order 10082, supra, providing for publication in four organs, were not mandatory by virtue of said section 4 of the Trade Agreements Act of 1934.

■ Second, the Customs Court also concluded that publication in the Federal Register alone was enough to comply with the requirement for "reasonable public notice," in view of the express provisions of section 8 of the Federal Register Act, supra, in the absence of any contrary statutory provision.

We agree with both of the foregoing conclusions. For the reasons hereinafter stated, we are of the opinion that these two points require affirmance of the judgment below.

■ The Customs Court opinion made no mention of section 12 of the Federal Register Act, *supra*, relied on by appellant here. Section 12 contains language which excludes the application of that Act to treaties, conventions, protocols and other international agreements and appellant contends that the Act as a whole, therefore, has no application to the "notice of the intention to negotiate" the Torquay Protocol. We do not agree. There are basic differences between an international agreement and a "notice of the intention to negotiate" an international agreement. The former is a formal, completed agreement having the nature of law and is given status similar to an Act of Congress. For example, it is formally published according to law.[2] There is no more reason for bringing an international agreement within the scope of the Federal Register Act than there is to make the Act applicable to laws enacted by Congress. A "notice of the intention to negotiate" a protocol has no such formal status as the protocol itself and other media must be used for its publication. It was to provide a central, official means to disseminate information of the latter sort that the Federal Register Act was passed.

"The purpose of the Federal Register Act was to give notice to industry, to general business, or to the people of the country as a whole, of certain action taken by the President under a power granted to him

---

2. On and after Jan. 1, 1950, all treaties and international agreements to which the United States is a party are published in a compilation entitled, "United States treaties and other international agreements," 1 U.S.C. Sec. 112a, 1 U.S. C.A. § 112a. Prior to this date they were published in the United States Statutes at Large. See Preface, p. iii, to Vol. 1 of United States Treaties and other International Agreements.

958

by the Congress, so that such industry, business or the people might have notice of such action and act accordingly." Toledo, P. & W. R. R., v. Stover, D.C., 60 F.Supp. 587, 596.

It appears, and we so hold, that such "notice of the intention to negotiate" was not intended to be included in section 12 of the Federal Register Act.

Holding that section 12, supra, does not operate in this case to remove the pertinence of the notice provision of section 8 of the Federal Register Act, we turn to an examination of the notice provision of section 8 itself to test its applicability.

■ Appellant contends that the publication in the Federal Register alone was not sufficient to constitute "reasonable public notice" because sections 5, 7, and 8 of the Federal Register Act "relate *solely* to the publication of 1) notice of hearing 2) documents, and 3) original or certified copies of documents" and hence do not encompass the "notice of the intention to negotiate" which we have here. We are constrained to disagree. Section 8, *supra*, provides broadly that, "Whenever *notice of * * * opportunity to be heard* is required or authorized to be given by or under an Act of the Congress * * * *the notice shall be deemed to have been duly given * * * if * * ** published in the Federal Register * * *." (Emphasis ours.) It is evident from this clear language that Congress intended a proper publication in the Federal Register to be considered reasonable public notice unless otherwise provided by statute. We see no compelling distinction here between a "notice of opportunity to be heard" and a "notice of the intention to negotiate," for the very language of section 4, "in order that any interested person may have an opportunity to present his views," clearly indicates that it refers to an "opportunity to be heard." Furthermore, we have no doubt that "notice * * * deemed to have been duly given" is at least the equivalent of "reasonable public notice."

■ Our agreement with the Customs Court that the existence of "reasonable public notice" under section 4, *supra,* did not depend on strict compliance with Executive Order 10082 is further supported by our examination of the legislative history of section 4.

The Trade Agreements Act of 1934 conferred vast, and many believed unreasonable, powers on the President to enter into and modify trade agreements with foreign governments. The objections in Congress to the proposed Act, which culminated in the addition of section 4, are well stated in the Minority Views in the House Report No. 1000 on H.R. 8687, from the Committee on Ways and Means, 73d Congress, 2d Session, page 22:

"11. It provides no opportunity for domestic industries to be *informed or heard* with reference to any *proposed Presidential tariff changes,* even though their very existence is at stake.

"12. In view of the apprehension which will constantly exist in the minds of all domestic producers over the possibility that their respective industries may, *without notice or hearing,* be sacrificed overnight for some alleged or passing advantage to an export product, the bill is not calculated to aid in the restoration and rehabilitation of domestic industry at large but does contain serious possibilities of disastrous consequences." (Emphasis ours.)

Senate Report No. 871 (p. 3) on the same bill, from the Committee on Finance, points out that a new section, 4, had been added, which required "public notice of the intention to negotiate an agreement." A later version of the Senate amendments shows that the word "reasonable" was inserted before "public" and in that form it became law. We can find nothing in the history of the section which tends in any way to show, as appellant asserts, that Congress was delegating to the President the power to determine what kind of notice should be given. *Congress* determined that it should be

*reasonable public* notice, leaving no discretion in him. The President, in Executive Order 10082 was not *defining* what constituted "reasonable public notice" under the statute but rather was merely following the mandate of Congress that such notice must be given. His order to publish the notice in four organs was commendable, but included more than was necessary, the minimum statutory requirement being met, in our opinion, by the admittedly complete publication in the Federal Register.

Appellant cites Bradley v. American Radiator & Standard Sanitary Corp., D. C., 6 F.R.D. 37, 41, affirmed 2 Cir., 159 F.2d 39, for the proposition that an executive order promulgated by the President pursuant to the authority delegated to him by Congress has the effect of a statute. While we can agree with this contention, the proposition for which the Bradley case is cited has no bearing here because the President's order, insofar as it dealt with notice, was not pursuant to authority *delegated* to him by Congress, as we construe section 4, *supra,* and therefore it is unnecessary to consider this case further.

■ Appellant has referred us to previous Executive Orders promulgated by the President under section 4, arguing that the notice requirements of these Executive Orders were tacitly approved by Congress on each occasion it granted an extension of the Trade Agreements Act, citing Congressional reports in 1937, 1940, 1943 and 1945. Appellant argues further that this constituted a legislative adoption of these Orders and that their notice provisions became "as much a part of said section 4 as though expressly enumerated therein by Congress." We believe, however, that this indicated at best that Congress was satisfied with the manner in which the Act was being administered. It certainly does not mean that the statute was to be replaced by the judgment of the President as to what should constitute reasonable public notice. Promulgating orders in an attempt to comply with a statute does not make the orders a part of the statute.

■ Finally, neither does the fact that ten years elapsed after passage of the Federal Register Act before the President, by an Executive Order, *required* publication therein under section 4 convince us that the President was supposed to *define* what constituted reasonable public notice. Compliance with the statute is a question for the courts to decide and, in this case, did not depend on compliance with the Executive Order.

The judgment of the Customs Court is affirmed.