Slip Op. 04 - 148

# *UNITED STATES COURT OF INTERNATIONAL TRADE*

|  |  |
|---|---|
| HUAIYANG HONGDA DEHYDRATED VEGETABLE CO., | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | : |
| | : |
| UNITED STATES, | : |
| | : |
| Defendant, | : |
| | : |
| and | : |
| | : |
| FRESH GARLIC PRODUCERS ASS'N, CHRISTOPHER RANCH, L.L.C., FARM GATE, L.L.C., THE GARLIC CO., VALLEY GARLIC, and VESSEY AND CO., | : |
| | : |
| Defendant-Intervenors. | : |

**Before: MUSGRAVE, JUDGE**

Court No. 03-00636

[On challenge by producer/exporter to decision of U.S. Department of Commerce to rescind administrative review of same, judgment for the defendant.]

Decided: November 22, 2004

*deKieffer & Horgan* (*J. Kevin Horgan*), for the plaintiff.

*Peter D. Keisler*, Assistant Attorney General; *David M. Cohen*, Director, *Jeanne E. Davidson*, Deputy Director, Civil Division, Commercial Litigation Branch, United States Department of Justice, (*Stefan Shaibani*); and Office of Chief Counsel for Import Administration, U.S. Department of Commerce (*Scott D. McBride*), of counsel, for the defendant.

*Collier Shannon Scott, PLLC* (*Michael J. Coursey*), for the defendant-intervenors.

## OPINION

In this action, Huaiyang Hongda Dehydrated Vegetable Company ("Hongda"), a producer or exporter of fresh garlic from the People's Republic of China (PRC), contends the International Trade Administration of the U.S. Department of Commerce ("Commerce") improperly rescinded the annual administrative review of the antidumping order on importations of garlic from the PRC that was initiated prior to completion of Hongda's new shipper review. *See Fresh Garlic From the People's Republic of China: Partial Rescission of Antidumping Duty Administrative Review*, 68 Fed. Reg. 46580 (Aug. 6, 2003). *See also Antidumping Duty Order: Fresh Garlic From the People's Republic of China*, 59 Fed. Reg. 59209 (Nov. 16, 1994). Alternatively, Hongda complains that the 376.67% country-wide dumping margin from the 1994 investigation has been discredited and therefore its continued application to Hongda is arbitrary, capricious and otherwise not in accordance with law. However, the Court sustains the rescission of the administrative review and concludes that it lacks jurisdiction to hear argument on the continued viability of the 1994 country-wide margin.

### *Background*

During the anniversary month of publication of an antidumping duty order, a domestic interested party with respect to named exporters and producers covered by the order, and an exporter, producer or importer with respect to subject merchandise entered during the relevant period of review, may request Commerce to conduct an administrative review. *See* 19 U.S.C. § 1675(a)(1); 19 C.F.R. § 351.213(b). *See also* 19 U.S.C. § 1677(9) ("interested party" defined). In addition to assessment on entries during the period of review, administrative review establishes a new cash deposit rate on future entries of subject merchandise. *See* 19 U.S.C. § 1675(a)(2)(C).

The administrative record reveals that Commerce published a notice of opportunity to request an annual administrative review of the antidumping order in the Federal Register on November 1, 2002, before the preliminary results of Hongda's new shipper review had been completed.[1] The domestic industry petitioners then requested review of several respondents including Hongda, and the administrative review was initiated on December 26, 2002. *See* R 3; R 5.[2] Hongda did not at the time submit a similar request.

After initiation of the review, the domestic industry petitioners submitted a memorandum to Commerce alleging that they had uncovered "massive" under-reporting of U.S. sales by Hongda and two other respondents. *See* R 49 (Apr. 1, 2003); Confidential Administrative Record Document 6 (Apr. 1, 2003). The petitioners compared import statistics with information[3] on the three respondents including Hongda which accounted for "virtually" all of the imports of garlic from the PRC during the relevant period and alleged that two and a half times the amount of garlic from the PRC had entered the U.S. during the time as compared with what had been reported. *Id*. at 2. They

---

[1] *Cf. Antidumping or Countervailing Duty Order, Finding or Suspended Investigation: Opportunity to Request Administrative Review*, 67 Fed. Reg. 66612 (Nov. 1, 2002), Administrative Record Document ("R") 1 (covering the period Nov. 1, 2001 to Oct. 31, 2002); *Fresh Garlic from the People's Republic of China: Rescission of New Shipper Antidumping Review and Initiation of New Shipper Antidumping Duty Review*, 67 Fed. Reg. 44594 (July 3, 2002) (covering the period Nov. 1, 2001 to Apr. 30, 2002).

[2] *Initiation of Antidumping and Countervailing Duty Administrative Reviews*, 67 Fed. Reg. 78772 (Dec. 26, 2002). In light of the period covered by the new shipper review, the administrative review of Hongda would have examined Hongda shipments between May 1, 2002 and October 31, 2002.

[3] The domestic industry's allegation with respect to Hongda was based upon certain information submitted at the new shipper review.

therefore requested that Commerce, in consultation with the (former) U.S. Customs Service,[4] investigate further and apply adverse inferences if indeed these respondents had under-reported. *See id.* at 11. It appears that the petitioners, still desiring investigation, re-alleged under-reported sales and transhipment soon thereafter. *Cf.* R 55 (Apr. 18, 2003) (Commerce memo to file).

At the time, Commerce had not received Hongda's response to the antidumping questionnaire. On the other hand, Commerce had sent the questionnaire addressed to Hongda via its counsel for the new shipper review. *See* R 7 (Dec. 30, 2002). In early April, Commerce learned that such counsel had not been retained to represent Hongda at the administrative review. *See* R 56 (Apr. 22, 2003) (Commerce memo to file). It therefore sent the questionnaire directly to Hongda in the PRC. R 57 (Apr. 23, 2003). Four days later, the domestic industry petitioners requested rescission of the administrative review of Hongda. R 61 (Apr. 28, 2003). The petitioners did not properly serve Hongda with a copy of this withdrawal. *See* Pl.'s Br., App. 7 at 2. *Cf.* R 61 at 5.

Commerce did not immediately act on the domestic industry's request. It did, however, immediately publish the preliminary new shipper review results for Hongda the following day. *Fresh Garlic from the People's Republic of China: Preliminary Results of Antidumping Duty New Shipper Review*, 68 Fed. Reg. 22676 (Apr. 29, 2003). The results relied upon adverse facts available to impose against Hongda the PRC-wide rate of 376.67 percent, a rate in effect since 1994 that was based upon information contained in the petition "corroborated for the preliminary results of the first

---

[4] The U.S. Customs Service was reorganized into the United States Bureau of Customs and Border Protection pursuant to the *Homeland Security Act of 2002*, Pub. L. No. 107-296 § 1502, 2002 U.S.C.C.A.N. (116 Stat.) 2135, 2308, effective March 1, 2003. *See Reorganization Plan Modification for the Department of Homeland Security*, H.R. Doc. No. 108-32 at 4 (2003). Matters relating to customs fraud crimes were ultimately organized into the U.S. Bureau of Immigration and Customs Enforcement ("BICE"). *See* H.R. Rep. No. 37, 108th Cong., 1st Sess. 2003.

administrative review" as well as "corroborated in subsequent reviews to the extent that the Department noted the history of corroboration[.]" *Id*. at 22679-80. The final new shipper review results followed nearly two months later and reiterated the viability of the 1994 country-wide rate for Hongda. *Fresh Garlic From the People's Republic of China: Final Results of Antidumping Duty New Shipper Review*, 68 Fed. Reg. 36767 (June 19, 2003) ("*New Shipper Results*").

A month afterwards, Hongda asserted an interest in proceeding with the instant administrative review, which by this time was approximately eight months after initiation. On July 24, 2003, about a week after filing its notice of appearance, Hongda's counsel met with Commerce officials and purportedly urged continuation of the administrative review due to information that had come to Hongda's attention and that of certain U.S. sureties acting on behalf of certain U.S. importers. *See* R 112 (July 25, 2003) (Commerce memo to file); R 107 (July 18, 2003) (notice of appearance). Specifically, in written comments submitted on July 29, 2003, Hongda explained that it opposed rescission of the administrative review on the ground that two fraudulent schemes designed to evade antidumping duties on imports of Chinese agricultural products had been uncovered and that these particularly implicated Hongda's customs and potential antidumping duty liabilities. R 113 (July 29, 2003). Allegedly, certain producers or exporters had been making entries of garlic using Hongda's name and its import bond which had been posted as security during the pendency of the new shipper review for any ultimate antidumping duty liability. *Id*. *See* 19 C.F.R. § 351.214(e). Therefore, Hongda argued, continuing the administrative review afforded the opportunity to identify legitimate and illegitimate garlic shipments, develop solutions for curtailing the fraudulent abuse of its antidumping reviews with respect to China, and resurrect public

confidence in the proper administration of Chinese agricultural imports. *Id*. The domestic industry, however, urged Commerce to proceed with rescission with respect to Hongda the same day. R 115 (July 29, 2003) (Commerce memo to file).

Commerce immediately reported Hongda's allegations of import fraud to the "Chief of the Other Government Agency Branch" of Customs and Border Protection. R 120 (Aug. 1, 2003). Nonetheless, Commerce rescinded the administrative review of Hongda shortly thereafter. *Fresh Garlic From the People's Republic of China: Partial Rescission of Antidumping Duty Administrative Review*, 68 Fed. Reg. 46580 (Aug. 6, 2003). The public notice of Commerce's determination stated that rescission of the administrative review was appropriate because customs fraud is within the "statutory purview" of the Bureau of Immigration and Customs Enforcement rather than Commerce, that the domestic industry petitioners had withdrawn their request, that Commerce had not expended significant resources on the review to date, and that Hongda itself had not properly requested the administrative review or had otherwise participated in it until recently. One day later, Commerce extended the deadline for the preliminary administrative review results of the remaining respondents until October 31, 2003. *See Fresh Garlic From the People's Republic of China: Notice of Extension of Time Limit for the Preliminary Results of Antidumping Duty Administrative and New Shipper Reviews*, 68 Fed. Reg. 47020 (Aug. 7, 2003). This action followed.

### *Jurisdiction and Standard of Review*

Jurisdiction is alleged pursuant to 19 U.S.C. § 1516a(a)(2)(B)(iii) and 28 U.S.C. § 1581(c). A decision by the administering authority to rescind a particular administrative review must be supported by substantial evidence and be in accordance with law. *See* 19 U.S.C. § 1516a(b)(1)(B)(i).

*Discussion*

Monthly over the past twenty years, Commerce has published the outstanding orders with anniversary dates for the particular month. The practice amounts to clear notification to all potential interested parties of the opportunity to request an administrative review, as well as indication of Commerce's preference to have all parties interested in proceeding with administrative review submit a written request for same in response to the published notice. *See Ferro Union, Inc. v. United States*, 23 CIT 178, 182, 44 F.Supp.2d 1310, 1316 (1999) (discussing *Potassium Permanganate from the People's Republic of China*, 59 Fed. Reg. 46035 (Sep. 6, 1994)). Once a request for administrative review is submitted, it may be withdrawn, and the administrative review rescinded, within 90 days of the published notice of opportunity, although Commerce "may extend this time limit if the Secretary decides that it is reasonable to do so." 19 C.F.R. § 351.213(d)(1). *Cf. Fuyao Glass Indus. Group Co. v. United States*, 27 CIT ___, Slip Op. 03-99 at 7 (July 31, 2003), (during first 90 days the party requesting administrative review controls whether review is to proceed, if no other party also requests review) *with Sugiyama Chain Co. v. United States*, 18 CIT 423, 430, 852 F. Supp. 1103, 1110 (1994), *aff'd* 60 F.3d 843 (Fed. Cir. 1995) (Commerce has the discretion to accept or reject an interested party's withdrawal of its request for an administrative review pursuant to 19 U.S.C. § 1675(a)(1)). The dispute here concerns this latter provision.

I

Approximately eight months after initiation of the administrative review it was rescinded because Commerce had "not committed significant resources to date" and the "petitioners were the only party to request an administrative review" of Hongda. 68 Fed. Reg. at 46581. Hongda had not

complied with the formality of responding to the published notice of opportunity, but at this stage it argues that Commerce's decision was unreasonable when considered against the following: (1) it was not until April 23, 2003, that Commerce finally sent its questionnaire directly to Hongda;  (2) the questionnaire was untranslated and no Hongda personnel are fluent in English; (3) Hongda did not at the time have legal counsel for the administrative review; (4) five days after Commerce properly sent the questionnaire to Hongda in the PRC (April 28, 2003), the domestic industry petitioners withdrew their request for administrative review, which was 123 days after the notice of initiation was published (*i.e.*, the *day before* Commerce published the preliminary new shipper review results); and (5) after Hongda retained counsel on July 18, 2003, counsel immediately contacted Commerce and met with Commerce officials on July 24, 2003 and declared Hongda's willingness to fully participate in the administrative review.  Hongda further argues that Commerce's decision was unreasonable since it ignored the alleged import fraud which bears on the magnitude of Hongda's antidumping duty liability.  Pl.'s Br. at 7-8.

Most of Hongda's points appear directed toward argument that it had inadequate notice of the administrative review.  The Court is sympathetic, but the position is ultimately untenable, for several reasons.  First, Hongda requested and participated in a new shipper review, which, like an administrative review, is conducted pursuant to section 751 of the Tariff Act of 1930, as amended. 19 U.S.C. § 1675.  *Cf.* 19 C.F.R. §§ 351.214(b) & 351.221(c).  Initiation of either type of review is dependant upon knowledge of the anniversary date of the order.  *See* 19 C.F.R. §§ 351.213(b), 351.214(d), 351.221(c)(1).  Having thus participated in a new shipper review, Hongda cannot persuasively disclaim imputed knowledge of Commerce's administrative review policies and

procedures. Furthermore, prior involvement in antidumping duty proceedings concerning the same subject merchandise gives rise, *a fortiori*, to an interest in monitoring for publication of the annual notice of opportunity to request review. *Cf. Fed. Crop Ins. Corp. v. Merrill*, 332 U.S. 380, 385, 68 S.Ct. 1, 3 (1947) (promulgated regulations were binding on all who sought to come within the Federal Crop Insurance Act regardless of actual knowledge of the regulations or "the hardship resulting from innocent ignorance").

Second, as a general matter, publication in the Federal Register "is sufficient to give notice of the contents of the document to a person subject to or affected by it." 44 U.S.C. § 1507. *See, e.g.*, *Lyng v. Payne*, 476 U.S. 926, 942-43, 106 S.Ct. 2333 (1986); *Stearn v. Dep't of the Navy*, 280 F.3d 1376, 1384 (Fed. Cir. 2002); *Aris Gloves, Inc. v. United States*, 281 F.2d 954 (CCPA 1958), *cert. denied*, 82 S.Ct. 398, 368 U.S. 954 (1962); *Cathedral Candle Co. v. U.S. Intern. Trade Com'n*, 27 CIT __ n.10, 285 F.Supp.2d 1371 n.10 (2003). While it may be true that constructive notice in the Federal Register of a hearing or opportunity to be heard is geographically explicit only "to all persons residing within the States of the Union and the District of Columbia"[5] and also that there may also be instances where notice by publication is insufficient as a matter of law, "[t]he purpose of the Federal Register Act was to give notice to industry, to general business, or to the people of the country as a whole, of certain action taken by the President under a power granted to him by the Congress, so that such industry, business or the people might have notice of such action and act accordingly." *Aris Gloves*, 281 F.2d at 957-958 (quoting *Toledo, P. & W.R.R. v. Stover*, 60 F.Supp. 587, 596 (N.D. Ill. 1945)). All industries or businesses availed of the "substantial privilege" of doing

---

[5] *See* 44 U.S.C. § 1508.

business within the United States are chargeable with knowledge of its laws and the manner of their execution to maintain public order. *Cf. Exxon Corp. v. Wisconsin Dep't of Revenue*, 447 U.S. 207, 100 S.Ct. 2109 (1980) (taxation nexus); *Pensacola Telegraph Co. v. Western Union Telegraph Co.*, 96 U.S. 1, 6 Otto 1 (1877) (national privilege is *quid pro quo* for acceptance of national terms).

Third, even imperfect notice does not, necessarily, void agency action undertaken pursuant thereto. *See Brock v. Pierce County*, 476 U.S. 253, 106 S.Ct. 1834 (1986); *Intercargo Ins. Co. v. United States*, 83 F.3d 391, 396 (Fed. Cir. 1996); *Kemira Fibres Oy v. United States*, 61 F.3d 866 (Fed. Cir. 1995). The question, essentially, is whether a plaintiff has been substantially prejudiced by the imperfect notice. *E.g.*, *Intercargo*. One may, in fact, be apprized of circumstances amounting to actual or implied notice of the matter invoked by the agency. *See United States v. Elof Hansson, Inc.*, 296 F.2d 779, 48 CCPA 91 (1960); *Hoenig Plywood Corp. v. United States*, 51 Cust. Ct. 336, RD 10569 (1963). Here, it is undisputed that counsel, while representing Hongda at the new shipper review, received the original administrative review questionnaire that Commerce intended to serve upon Hongda. If the transmission of that questionnaire by Commerce to counsel was erroneous, it is understandable. Counsel apparently continued to appear on the service list maintained by the Central Records Unit. *See* 19 C.F.R. § 351.103(c). *See, e.g.*, R 3. Counsel did not alert Commerce to the "error" at the time. It took a further three months and Commerce's initiative to discover that counsel's representation of Hongda did not, at least at the time, extend to the administrative review proceeding. And during that time, counsel's silence furthered the impression that they represented Hongda in successive segments of the administration of the dumping order.

Counsel do not comment further on the document's disposition, but assuming receipt of the questionnaire elicited counsel's surprise, they had three choices: return it, forward it, or ignore it.

The ABA Model Rules of Professional Conduct do not specifically require counsel to forward or disclose receipt of *arguendo* extraneous matter to a client, but neither do they suggest ignoring it.[6] Whether counsel had a duty to notify the client of the existence of the questionnaire (or, for that matter, to notify Commerce) depended not upon whether the questionnaire pertained to a matter within the scope of the representation, but rather upon whether silence had the potential to bring about "substantial prejudice" to Hongda. If it was not a matter within the scope of representation, then ignoring it might serve a tactical purpose, *e.g.* subsequently being able to claim improper notice and thereby defeating jurisdiction. In accordance with the foregoing, however, that would at best have been an open question at the time, and the Model Rules, in keeping with the Model Code, essentially advise "when in doubt, confer." Truly, the exercise of that discretion ultimately rests with counsel, but to the extent Commerce considered that counsel's receipt of the administrative review questionnaire without apparent further activity mitigated in favor of finding constructive or implied notice in Hongda,[7] such consideration was not an abuse of discretion.

---

[6] Model Rule 1.4 of the ABA Model Rules of Professional Conduct, for example, implores counsel to "keep the client reasonably informed about the status of a matter" and "explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation[,]" *id*. at (a)(3) & (b), and Model Rule 1.2(c) allows counsel to "limit the objectives of the representation if the client consents after consultation." Similarly, under the ABA Model Code of Professional Responsibility, Canon 6 spoke on providing competent representation to the client. Counsel aspired, pursuant to EC 6-4, to "safeguard the interests of a client," but are obligated, pursuant to DR 6-101(A)(3), not to neglect a legal matter "entrusted" to them. EC 7-7 reiterated that it is the client who is responsible for making decisions but entitled counsel to make decisions "not affecting the merits of the cause or substantially prejudicing the rights of a client." DR 7-101(A)(3) admonished counsel not to intentionally "prejudice or damage the client during the course of the professional relationship."

[7] On the subject of notice, Hongda also complains that the domestic industry did not properly serve it with a copy of their request to withdraw their administrative review request. The point does
(continued...)

Nor was it an abuse of discretion for Commerce to conclude that Hongda's opposition to rescission and its belated expression of interest in the completion of the administrative review were not on par with a proper written request for administrative review. Hongda's silence subsequent to the review's initiation cannot reasonably be construed as reliance upon the request of another as an expression of interest that the administrative review be conducted. Even if it could, such reliance places one at a disadvantage in arguing that an administrative review should continue if the other withdraws its request, as this matter demonstrates. The record is devoid of any (other) indicia of detrimental reliance, and the Court must defer to Commerce's reasonable policy of having each interested party desiring initiation of an administrative review submit a separate written request to that effect.

Commerce might well have wondered why it was suddenly confronting tactical *volte face* by both parties late in the proceeding. In the final analysis, what appears to have tipped the balance for Commerce was the fact that Hongda had, apparently, been dilatory in asserting its interests. At this stage, even considering the matter in a light most favorable to Hongda, fifty-five days had elapsed between the time Commerce sent the questionnaire to Hongda directly and the time that it finally retained legal counsel to represent it at the administrative review proceeding. Hongda does not here adequately explain why it took nearly two months to initiate contact with Commerce to declare that it wanted to "fully participate." Instead, Hongda offers for consideration *Ferro Union*, *supra*, 23 CIT

---

⁷ (...continued)
not address the impression that Hongda did not properly request or otherwise participate in the administrative review when the opportunity to do so presented itself, nor does it demonstrate substantial prejudice to Hongda since Commerce did not, as above observed, immediately act upon the domestic industry's request but waited a further 55 days before deciding to rescind during which time Hongda had the opportunity to fully express its opposition to recision to Commerce.

178, 44 F.Supp.2d 1310, which stated that "the legislative history of 19 U.S.C. 1675(a) indicates that Congress intended to limit reviews in which no one had an interest, and Commerce should rightly continue a review in which there is an expressed interest." Pl.'s Br at 8 (quoting 23 CIT at 181, 44 F.Supp.2d at 1315). Hongda also draws attention to the statement that in administrative reviews "involving multiple parties, Commerce has only granted termination when no other party objected to the termination." *Id*. (quoting 23 CIT at 182, 44 F.Supp.2d at 1316).

It is worthwhile for this Court to agree, even emphasize again, that "Commerce should rightly continue a review in which there is an expressed interest," but the matter here is not considered pursuant to a *de novo* standard of review. *Ferro Union* imposes no limitation on Commerce's consideration of a withdrawal of interest in an administrative review by the interested party which requested it. Rather, the case sustained Commerce's decision to reject an attempt by the domestic steel industry to terminate that administrative review, and the reference in *Ferro Union* to reviews "involving multiple parties" addresses the situation of multiple properly-submitted written requests for administrative review. That is not the situation here, which is rather analogous to *Potassium Permanganate from the People's Republic of China*, *supra*, 59 Fed. Reg. 46035. As in that matter, also described in *Ferro Union*, Commerce has rescinded an administrative review over the objection of a respondent which has not filed its own request for administrative review. *See* 23 CIT at 182, 44 F.Supp.2d at 1316. Commerce's decision to rescind administrative review of Hongda is therefore not without precedent.

Lastly, Hongda takes issue with Commerce's determination to rescind despite the fact that "Hongda and several importers expressed concerns pertaining to the rescission of the administrative review of Hongda[.]" That, to say the least, is an understatement: the determination to rescind was

predicated in part on reasoning that "the arguments they presented [in opposition to recision] pertain to allegations involving fraud." 68 Fed. Reg. at 46581.

The government concurs that the Bureau of Immigration and Customs Enforcement, not Commerce, is statutorily assigned the task of investigating customs fraud. *See* 19 U.S.C. § 1592. Hongda pleads that the very assertion of fraud rendered the decision unreasonable. Specifically, Hongda argues that "[i]t is in the public's best interest to investigate this claim prior to ordering recision[,]" that as a matter of fundamental fairness it "should be allowed to participate in the review so that [Commerce] could accurately calculate any potential dumping margin", and that the mere assertion of fraud and Hongda's expression on interest in fully participating in the administrative review rebutted any presumption that rescission with respect to Hongda would be reasonable.[8] However, Hongda does not show how the alleged fraud affected the margin that was applied to it. In fact, there is no connection (*see infra*).

To the extent that the government's rationale implies that import fraud is irrelevant to an administrative review, such a position is unacceptable, due to the potential for skewed review results. Nevertheless, Commerce's position here appears to be that import fraud *per se* is not, without more, a sufficient reason to require that an administrative review proceed in the face of withdrawal of interest in the review by the sole party that properly requested it. Thus, Commerce essentially reasoned that whether the public interest is served by the investigation of customs fraud, proceeding with an administrative review in the first place depends upon an interested party's timely expression of its interest in it. In this matter, Commerce simply concluded that Hongda's expression of interest

---

[8] Pl.'s Br. at 7-8. Hongda also notes that the Federal Register notice did not accurately reflect its willingness to fully participate in the administrative review.

in the administrative review was belated. On this basis, unfortunately for Hongda, the Court is constrained to conclude that Commerce's consideration of the opposing arguments and its decision to rescind was not an abuse of discretion since it appears to have substantial supporting evidence on the administrative record. There may be instances where actual participation amounts to such a sufficient expression of interest in completing the administrative review that its recision would be unlawful, but this is not one of them.

II

Whether Hongda's allegation of customs fraud is true, its position has not been worsened as a result of the recision of the administrative review. The margin that continued to be applicable as a result of recision, *i.e.*, the new shipper review results, was not determined despite assertion of customs fraud. Nonetheless, Hongda argues that the country-wide margin that was applied to it was not lawfully "determined" since it is merely the country-wide rate from the 1994 investigation. The country-wide rate, Hongda emphasizes, was obtained from the petition and was not corroborated.

Commerce is authorized to rely on "facts otherwise available" in making its determinations if it cannot obtain the information directly. It may also derive an adverse inference if a party has been uncooperative. But, whenever Commerce uses "secondary information" rather than information "obtained" in a review, it is required "to the extent practicable" to corroborate that information. Information from a prior segment of an antidumping proceeding is considered secondary information. *See generally* 19 U.S.C. § 1677e.

Commerce interprets the corroboration requirement to mean that secondary information must have "probative value." *See* Statement of Administrative Action at 870; *Antidumping Duties; Countervailing Duties*, 62 Fed Reg. 27296, 27409 (1997). Thus, on this matter Hongda argues the

administrative record contains no indicia of corroboration of secondary information, no memoranda evincing any discussions thereon. In the final analysis, Hongda argues, Commerce did not articulate any reasoning in the recision notice to explain why the country-wide rate continues to be probative.

However, as the government points out, the only action taken by Commerce that is being challenged is the decision to rescind the review itself with respect to Hongda. Commerce made no decision on the merits. Commerce did not "decide" to apply facts available. *See* 19 U.S.C. § 1677e(a). The recision of the administrative review merely continued the margin that was already in effect. Accordingly, there was no determination to use a "facts available" figure that would have otherwise required corroboration. The Court therefore concludes that it lacks jurisdiction over Hongda's claim. Any lack of corroboration in the determination to apply the country-wide figure to Hongda was properly appealable from publication of *New Shipper Results*, *supra*, 68 Fed. Reg. 36767.

### *Conclusion*

For the foregoing reasons, judgment will enter in favor of the defendant.

/s/ R. Kenton Musgrave

R. KENTON MUSGRAVE, JUDGE

Dated: November 22, 2004
      New York, New York

**ERRATA**

*Huaiyang Hongda Dehydrated Vegetable Co. v. United States*, Court No. 03-00636, Slip Op. 04-148, dated November 22, 2004:

Footnote 4, delete " ("BICE") ".

Page 5, line 21, delete "its".

Footnote 7, second to last line, change "55" to "100".

Page 12, line 14, change "fifty-five" to "86".

Page 12, line 17, change "two" to "three".

November 30, 2004